(No. 33873.—

The People *ex rel.*, Raymond J. Hahn *et al.*, Appellees, *vs.* Stephan E. Hurley *et al.*, Appellants.

*Opinion filed May 23, 1956—Rehearing denied September 24, 1956.*

John C. Melaniphy, Corporation Counsel, of Chicago, (L. Louis Karton, Sydney R. Drebin, and Harry H. Pollack, of counsel,) for appellants.

Michael F. Ryan, of Chicago, (Richard F. McPartlin, Jr., of counsel,) for appellees.

Goldberg, Devoe, Brussell & Shadur, of Chicago, (Carl Devoe, and Abner J. Mikva, of counsel,) for Citizens Civil Service Association of Illinois, *amicus curiae.*

Mr. Justice Klingbiel delivered the opinion of the court:

Three individuals seeking employment as sign hangers by the city of Chicago brought *mandamus* proceedings in the superior court of Cook County to compel the Civil Service Commission of the city to nullify and set aside an examination held for such position on April 11, 1953. The trial court denied relief, but on appeal to the Appellate Court its judgment was reversed and the cause remanded

with directions to award the writ. (*People ex rel. Hahn* v. *Hurley*, 7 Ill. App.2d 107.) We have granted leave for further appeal to this court.

Relators had been employed as sign hangers by the city under temporary appointments. They took the examination with 219 other applicants, and 121, including relators, passed. Relators' marks or grades were not high enough, however, to qualify them for the list of persons eligible for certification. They were discharged from their temporary positions, and thereafter brought this action. It is contended (1) that the Cities Civil Service Act was violated because the competitive examination did not include physical and health tests, and (2) that the examination was not practical and did not fairly test the relative capacities of the applicants in accordance with requirements of the act. The Appellate Court sustained the first contention, holding that tests of physical qualifications and health must be included in the examination. The court found it unnecessary, therefore, to decide the question whether the examination lacked practicality.

The relevant provisions of the Cities Civil Service Act are found in section 6, which states in part that the examination "shall be public, competitive, and open to all citizens of the United States, with specified limitations as to residence, age, health, habits and moral character. * * * Such examinations shall be practical in their character, and shall relate to those matters which will fairly test the relative capacity of the persons examined to discharge the duties of the positions to which they seek to be appointed, and shall include tests of physical qualifications and health, and when appropriate of manual skill." (Ill. Rev. Stat. 1951, chap. 24½, par. 44.) No physical or health test was given as part of the competitive examination, which determines the persons to be placed on the eligible register. Relators insist that under the statutory language it is mandatory for the commission to give such tests at the time

of the initial examination. Defendants contend it is a sufficient compliance with the law if a physical examination is given prior to certification and appointment from the eligible register.

The language of the provision quoted would appear, on first inspection, to require a competitive physical examination for any position in the classified service. It is evident, however, that when read in the light of other provisions, and of the common purpose of physical tests for positions such as the present one, the provision cannot reasonably be construed as urged by relators. By the express language of the present provision health is also included, together with residence, age and moral character, as one of the factors as to which "limitations" may be specified. Obviously such matters could not be subjects of competitive examination. Further provisions of section 6 specify certain conditions under which "such physical examination shall be waived and the applicant shall be considered to have passed such examination." The facts that examination may be "waived" and the applicant considered to have "passed" indicate that the legislature contemplated only minimum standards of a noncompetitive character.

The section also provides that "In the event that any applicant for an office or place in the civil service (who has been found eligible for appointment and whose name has been placed upon the register provided for in this Act) has not been appointed to such office or place within sixty days from the date of his examination as to physical qualifications and health, the Commission shall cause a second examination to be made of said applicant prior to his appointment and within sixty days of such appointment, which second examination shall be practical in character and shall relate to the cardiac, pulmonary, arterial, renal and sane condition of said applicant. If, upon such second examination, the physical, or mental condition of said applicant shall be found to be less than the minimum

standard fixed by the rules of such Commission, said applicant shall not be appointed. The name of said applicant shall be retained upon the register of candidates eligible for appointment and when again reached for certification and appointment the said applicant shall be again examined as herein provided, and if the physical or mental condition of the said applicant shall again be found to be less than the minimum standard fixed by the rules of such Commission, said applicant shall not be appointed and the name of said applicant shall be removed from the said register." The provision referring to the "minimum standard" fixed by the commission, and the provision for second and third physical examinations, show that such tests are not intended to test the comparative ratings of applicants, but rather to determine whether they can "pass" minimum physical qualifications. Reference to "the date of his examination as to physical qualifications and health" indicates that the competitive examination and the physical examination need not necessarily be conducted at the same time.

When we consider the purpose of physical examinations relators' position becomes even less tenable. No showing has been made that the duties of a sign hanger require special physical attributes beyond ordinary good health, or that the ability to perform such duties exists in proportion to the degree of physical prowess. Unlike qualities such as experience or manual skill, the factor of health or physique cannot be said to bear a direct relation to the relative capacities of the applicants. It would be unreasonable to ascribe to the legislature an intention to require applicants to compete with each other as to strength and health, where the particular work involves no special physical qualities. In so far as the present position is concerned, the physical examination has no tendency to "fairly test the relative capacity of the persons examined to discharge the duties of the positions to which they seek to be appointed;" nor can we infer a legislative intent, in the absence of specific

requirement, that such examination must be given before the eligible list can be posted. As the Appellate Court recently observed in *People ex rel. Carter* v. *Hurley,* 4 Ill. App.2d 24, "The giving of physical examination before applicants earn a place on the eligible register through written examination would accomplish no purpose essential to the proper functioning of the Cities Civil Service Act, but would add an undue burden and expense on the Commission." We conclude it was within the discretion of the commission to postpone physical examination until after the competitive examination determined those persons eligible for future certication. Such action cannot afford to relators a right to the writ of *mandamus.*

The parties have argued in this court the further contention that the subject matter of the competitive examination was not practical in character and did not fairly test the relative capacities of the applicants to discharge the duties of the position. The Appellate Court expressly declined to consider or pass upon this point, in view of its conclusion on the question of physical examinations. It is well settled that argument of counsel on questions other than the one decided by the Appellate Court is not properly directed to this court until they have been decided by that court. Where a judgment of reversal by the Appellate Court is based upon an erroneous view of the law with respect to one branch of the case, and it appears from the opinion that for such reason it has refused to consider and pass upon other assignments of error which it should consider, the cause will be remanded to that court upon reversal of its judgment, with directions to consider and pass upon such questions. *Canadian Radium & Uranium Corp.* v. *Indemnity Insurance Co.* 411 Ill. 325; *Miller* v. *Kresge Co.* 306 Ill. 104.

The judgment of the Appellate Court is reversed and the cause remanded to that court, with directions to consider the undecided contention concerning the practicality

of the examination and its suitability for testing the relative capacity of the persons examined to discharge the duties of the position; and thereupon either to affirm the judgment of the superior court or to reverse it and remand the cause with directions to award the writ.

*Reversed and remanded, with directions.*