THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RONALD H. JANIS, Defendant-Appellant.

Second District    No. 2—88—0558

Opinion filed May 17, 1989.—Rehearing denied June 16, 1989.

Kenneth D. Hubbard, of Joseph M. Laraia & Associates, P.C., of Wheaton (Joseph M. Laraia, of counsel), for appellant.

James E. Ryan, State's Attorney, of Wheaton, and Eleesha Pastor O'Neill, of Chicago (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, Ronald H. Janis, was found guilty by a jury in the circuit court of Du Page County of possession of a motor vehicle having a vehicle identification number (VIN) removed (Ill. Rev. Stat. 1985, ch. 95½, par. 4—103(a)(4)) and possession of a stolen motor vehicle (Ill. Rev. Stat. 1985, ch. 95½, par. 4—103(a)(1)), and was sentenced on the possession of a stolen motor vehicle conviction only to a 24-month term of probation, a $500 fine, and ordered to pay $1,500 restitution.

Defendant raises numerous issues for review; however, dispositive of this appeal is defendant's contention that the circuit court erred in denying his motion to suppress evidence.

Defendant filed a motion to suppress evidence, contending that Villa Park police officers entered upon his private property without a warrant and unlawfully seized a truck parked on the premises. At the suppression hearing, defendant testified that he owns and operates a plumbing business (Home Plumbing) located at 223-25 West St. Charles Road, in Villa Park, Illinois. According to defendant, there is a gravel area immediately in back of his business which is used only to store various equipment, pipe, and trucks associated with his plumbing business. No one has permission to be in this area after the business is closed. Access to the gravel area is by way of a private driveway, which defendant apparently owns, located behind the business and about 40 feet from the gravel area. The driveway is used by Home Plumbing vehicles, by the tenants of a house on defendant's property located to the rear of the business, and occasionally by kids parking there. According to defendant, the tenants did not have permission to use the gravel area behind the business, but did have access to it. St. Charles Road runs in front of the business where there is parking for customers. Michigan Avenue runs immediately to the west of defendant's property off of which runs the private driveway. The plumbing shop is located approximately 100 feet from the intersection of St. Charles Road and Michigan Avenue.

On cross-examination, defendant stated that his plumbing business is located in a small commercial area and is between several other retail businesses, a golf store and a ceramic tile store. Although there is a fence that partially separates the gravel area behind defendant's business from the property to the west, it is generally accessible from the private driveway. Defendant stated that he would not mind if the golf store used his gravel area and that he was aware that the golf store occasionally received deliveries through the gravel area behind his business. At that point the circuit court *sua sponte* terminated the questioning and, after defendant's counsel stated there were no other witnesses, indicated that there was a question whether the State had to go forward in view of the insufficiency of defendant's evidence. After hearing arguments of defendant's counsel, the court ruled that defendant had not demonstrated any reasonable expectation of privacy, that the area where the truck was parked was a common area, and that there was insufficient evidence to shift the burden of going forward to the State. The motion to suppress was denied.

The following facts were adduced at defendant's trial. Officer Robert Deevey of the Villa Park police department testified that he was on duty on December 2, 1986, and was dispatched at around 7:30 p.m. to the area of 225 West St. Charles Road to check for a stolen or abandoned vehicle. Upon arriving, Officer Deevey went to the rear of the building and observed two pickup trucks. One was white with no license plates, and the other was a newer model beige truck with no bed and no hood, but it had license plates on it which were registered to Home Plumbing on a 1975 pickup truck. The officer then observed an emission control sticker on the front of the engine compartment of the beige truck which indicated that the engine was manufactured in 1977 or later.

Following his initial investigation, the officer returned to the gravel area behind defendant's plumbing shop and ascertained the number of cylinders and the series number of the beige pickup truck. The officer then returned to the police station and telephoned defendant. Defendant indicated to Officer Deevey that he had owned the beige pickup for about five years. Prior to Officer Deevey going back a third time to the gravel area, defendant telephoned the police station and told Officer Deevey that he knew nothing about the beige pickup truck and that it must be stolen because it did not belong to him.

Deevey returned a third time to the gravel area, accompanied by two other officers. On that third visit, the officers opened the door of the beige truck and discovered that the VIN plate had been replaced.

The officers then towed the pickup truck to the city pound, where a subsequent search of the cab revealed a sheet with a VIN. A computer check of that VIN indicated that it belonged on a stolen vehicle. The evidence established that the cab, doors, and frame of the beige pickup truck were stolen.

The testimony of defendant and a defense witness indicated that defendant had received delivery of various truck parts, including a cab, doors, and frame, from "Rollie Johnson Auto Parts" and that the parts were paid for. Handwritten receipts purported to be from Rollie Johnson Auto Parts were introduced into evidence. Defendant denied knowing the various parts were stolen. Neither Rollie Johnson nor any representative of Rollie Johnson Auto Parts testified.

Defendant raises numerous contentions regarding the trial court's denial of his motion to suppress. Essentially, he first contends that there was governmental conduct, thereby implicating the fourth amendment. Second, he maintains that he had a reasonable expectation of privacy in the area behind his plumbing shop where the beige truck was parked. Third, he argues that no exceptions to the warrant requirement exist in this case. Finally, he posits that he is the owner of the property searched and seized; therefore, he has standing to assert a fourth amendment claim.

The State responds initially that defendant had no reasonable expectation of privacy in the area where the beige truck was located. The State further argues that the opening of the truck's door to examine the VIN without a search warrant was reasonable under the fourth amendment. In this regard, the State maintains that it was not an unreasonable search under these circumstances for Officer Deevey to have examined the VIN in an attempt to identify the owner of the vehicle.

■ The narrow issue we must decide in this case is whether the defendant had a reasonable expectation of privacy in the gravel area immediately behind his commercial business which he used for purposes related to his business. A warrantless search and seizure would only violate the fourth amendment if the defendant manifested a subjective expectation of privacy in the area searched or the property seized that society accepts as objectively reasonable. *California v. Greenwood* (1988), 486 U.S. 35, 39, 100 L. Ed. 2d 30, 36, 108 S. Ct. 1625, 1628; *Katz v. United States* (1967), 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507.

■ No single factor determines whether an individual legitimately may claim under the fourth amendment that a place should be free from unauthorized, warrantless governmental intrusions. (*Oliver*

*v. United States* (1984), 466 U.S. 170, 177, 80 L. Ed. 2d 214, 223, 104 S. Ct. 1735, 1741.) In determining the degree to which a search infringes upon individual privacy, the Court has looked to such factors as the intent behind the fourth amendment, the uses to which an individual has put a location, and society's understanding that certain areas deserve the most scrupulous protection from governmental invasion. *Oliver*, 466 U.S. at 178, 80 L. Ed. 2d at 223-24, 104 S. Ct. at 1741.

■ In applying these principles, we first recognize that the fourth amendment has historically protected business or commercial buildings, in which there may be legitimate expectations of privacy. (*Oliver*, 466 U.S. at 178 n.8, 80 L. Ed. 2d at 224 n.8, 104 S. Ct. at 1741 n.8; see *People v. Gardner* (1984), 121 Ill. App. 3d 464, 468, 459 N.E.2d 676; see generally 1 W. LaFave, Search & Seizure §2.4(b), at 429 (2d ed. 1987).) A businessman, like the occupant of a home, has a constitutional right to conduct his business free from unreasonable governmental entries upon his private commercial property. (*Dow Chemical Co. v. United States* (1986), 476 U.S. 227, 237, 90 L. Ed. 2d 226, 237, 106 S. Ct. 1819, 1825-26, citing *See v. City of Seattle* (1967), 387 U.S. 541, 543, 18 L. Ed. 2d 943, 946, 87 S. Ct. 1737, 1739.) Further, we note that although the area surrounding a business is not constitutionally equated with the curtilage of the home for purposes of aerial surveillance, the Supreme Court has not distinguished the two where there has been an actual physical entry onto the premises. *Dow Chemical Co.*, 476 U.S. at 237-39, 90 L. Ed. 2d at 237-38, 106 S. Ct. at 1825-27; see 1 W. LaFave, Search & Seizure §2.4(c), at 436-37 (1987).

We also look to the uses to which defendant put the property in which he claims a protected privacy right. The gravel area was located immediately behind his plumbing shop and was used only for purposes associated with defendant's plumbing business. Defendant testified that he stored pipe, air compressors, a pump and business vehicles not currently in use. It is not an area open to the public for parking or other general use, and no one had permission to be in the area after the business was closed. (*Cf. People v. Caserta* (1984), 123 Ill. App. 3d 608, 463 N.E.2d 190 (parking lot adjacent to commercial establishment open to the public is not subject to fourth amendment protection).) Rather, it is an area directly behind his business which was not accessible to the public and was utilized primarily as a storage area for the business. There is no doubt that this area is intimately related to defendant's plumbing shop and business.

We further consider whether society recognizes this type of area

to be deserving of the most scrupulous protection from governmental intrusion. While we find no Supreme Court or Illinois court decision directly on point, we think language in *Dow Chemical Co.* is particularly instructive. In *Dow Chemical Co.*, the Court noted that, unlike an aerial surveillance, an actual physical entry upon private commercial property would raise significant constitutional questions. (*Dow Chemical Co.*, 476 U.S. at 237, 90 L. Ed. 2d at 237, 106 S. Ct. at 1826.) Moreover, the Court was careful to limit its holding to an aerial surveillance and stated in a footnote that it was not addressing the issue of actual physical entry onto business premises. (*Dow Chemical Co.*, 476 U.S. at 239 n.7, 90 L. Ed. 2d at 238 n.7, 106 S. Ct. at 1827 n.7.) The area under consideration in *Dow Chemical Co.* was open area between structures and buildings of a manufacturing plant, not a commercial enterprise or business.

Additionally, the United States Court of Appeals for the Seventh Circuit has held that a business owner has a legitimate expectation of privacy in an area located outside of but immediately adjacent to his automobile repair shop which was used as part of the business enterprise. (*United States v. Swart* (7th Cir. 1982), 679 F.2d 698.) In so holding, the Seventh Circuit emphasized that a warrant is necessary to search portions of a commercial premises not open to the public and that there is no reduced expectation of privacy on business premises when the agents do not see items as a customer would ordinarily see them. (*Swart*, 679 F.2d at 701.) Furthermore, the *Swart* court noted that there was no evidence that the area searched was generally open to the public. *Swart*, 679 F.2d at 701.

■ In light of *Dow Chemical Co.* and *Swart*, we conclude that society does recognize that the area immediately adjacent to a commercial premises which is not open to the public and which is used for purposes related to the commercial enterprise is a constitutionally protected area. Here, the gravel area upon which Officer Deevey entered without a warrant was not open to the public and was used as a storage area directly related to defendant's plumbing business. As such, we hold that defendant did have a reasonable expectation of privacy in the gravel area in which the pickup truck was located.

As further support for our conclusion that defendant had a reasonable expectation of privacy in the gravel area, we believe the area may be considered as analogous to the curtilage of a dwelling-house. While we are cognizant of the language in *Dow Chemical Co.* suggesting that the intimate activities of the home and its curtilage do not reach the areas between manufacturing structures and buildings, we also recognize the Court's reference to "business curtilage" as dis-

cussed in *United States v. Swart* (7th Cir. 1982), 679 F.2d 698. (*Dow Chemical Co.*, 476 U.S. at 239 n.7, 90 L. Ed. 2d at 238 n.7, 106 S. Ct. at 1827 n.7.) Furthermore, *Dow Chemical Co.* was concerned with a manufacturing plant rather than a commercial enterprise or business, and, more importantly, the governmental conduct in *Dow Chemical Co.* involved aerial surveillance rather than an actual physical intrusion. *Dow Chemical Co.*, 476 U.S. at 239, 90 L. Ed. 2d at 238, 106 S. Ct. at 1826.

It is well recognized that the fourth amendment protects the sanctity of a person's own home (see, *e.g.*, *Payton v. New York* (1980), 445 U.S. 573, 589-90, 63 L. Ed. 2d 639, 653, 100 S. Ct. 1371, 1381-82), and its curtilage, the land immediately surrounding and associated with the home. (*Oliver*, 466 U.S. at 180, 80 L. Ed. 2d at 225, 104 S. Ct. at 1742.) On the other hand, an individual may not legitimately demand privacy for activities conducted out of doors in fields, except in the area immediately surrounding the home. (*Oliver*, 466 U.S. at 178-79, 80 L. Ed. 2d at 224, 104 S. Ct. at 1741.) The special protection accorded by the fourth amendment to the people in their persons, homes, papers, and effects is not extended to the open fields. *Hester v. United States* (1924), 265 U.S. 57, 59, 68 L. Ed. 898, 900, 44 S. Ct. 445, 446.

While we realize that a home and its curtilage are not precisely the same as a business or commercial building and its immediately surrounding area for purposes of fourth amendment analysis, we cannot ignore the well-established protections afforded the business premises under the fourth amendment. (See *Oliver*, 466 U.S. at 178 n.8, 80 L. Ed. 2d at 224 n.8, 104 S. Ct. at 1741 n.8; *See v. City of Seattle* (1967), 387 U.S. 541, 543, 18 L. Ed. 2d 943, 946, 87 S. Ct. 1737, 1739.) Nor are we unaware of the recognized definition of curtilage as being that area intimately associated with a dwelling-house. (Black's Law Dictionary 346 (5th ed. 1979).) As in the home and its curtilage, certain areas immediately surrounding a business or commercial building are intimately associated with the privacy of the business. Thus, those areas fall within the umbrella of privacy which envelopes the business or commercial building. We are careful to note, however, that there are different degrees of privacy between the home and the business and that our analogy to the home and its curtilage is not intended to alter the already recognized variances in privacy associated with a home and a business.

Although we do not find any cases which define the extent of a "business curtilage," we are persuaded by the Supreme Court's recent analysis of what constitutes curtilage of the home. (See *United*

*States v. Dunn* (1987), 480 U.S. 294, 94 L. Ed. 2d 326, 107 S. Ct. 1134.) In *Dunn*, the Court stated that the question of what constitutes curtilage should be resolved with particular reference to the proximity of the area claimed to be curtilage to the home, whether the area is within an enclosure surrounding the home, the uses to which the area is put, and the steps taken to protect the area from observation by people passing by. *Dunn*, 480 U.S. at 301, 94 L. Ed. 2d at 334-35, 107 S. Ct. at 1139.

■■ Applying these factors to this case, we find the gravel area behind defendant's plumbing shop to be within the "business curtilage." First, the area was immediately behind and abutted against the plumbing shop. Second, the area was used for storage of equipment and vehicles related to the plumbing business. Defendant generally did not allow public use of the area. Third, defendant testified that the area was not visible from a public way nor was it accessible by public ingress or egress. Although tenants of defendant as well as an occasional delivery person may have viewed the area, it was not open to the public or visible by people passing by on public property. In light of these factors, we do not find the fact that the gravel area was not within an enclosure surrounding the plumbing shop to be of particular importance.

■■ ■ As defendant had a reasonable expectation of privacy in this area of his own business premises, which we also conclude is within the "curtilage" of his plumbing shop, under these circumstances the warrantless physical intrusion by police into that area was not justified under the fourth amendment to the United States Constitution (U.S. Const., amend. IV). When the police make a warrantless seizure from a place where they have no right to observe, even if the object seen is in "plain view" from that location, such a seizure is unreasonable. (See *People v. Madison* (1988), 121 Ill. 2d 195, 208, 520 N.E.2d 374; *People v. Caserta* (1984), 123 Ill. App. 3d 608, 612-13, 463 N.E.2d 190.) Defendant, as the owner of the premises, clearly had standing to challenge the search and seizure of evidence which occurred on his premises. *Alderman v. United States* (1969), 394 U.S. 165, 176-77, 22 L. Ed. 2d 176, 188-89, 89 S. Ct. 961, 968-69; see *Rakas v. Illinois* (1978), 439 U.S. 128, 143 n.12, 58 L. Ed. 2d 387, 401 n.12, 99 S. Ct. 421, 430 n.12; *People v. Johnson* (1986), 114 Ill. 2d 170, 191-92, 499 N.E.2d 1355.

■■ Because the circuit court erroneously concluded that defendant had no reasonable expectation of privacy in the area of his business premises where the truck was situated and ruled that the State did not have to present any evidence on the motion to suppress, the

defendant's conviction, which was wholly based upon the evidence sought to be excluded, must be reversed. The State has not advanced any other basis to support the circuit court's order of suppression, nor has it suggested that remandment for continuation of the suppression hearing would enable it to present evidence which might contradict defendant's evidence or raise some other theory which might support the warrantless entry upon defendant's premises and the warrantless search and seizure of the vehicle. Furthermore, we have examined the record of the trial proceedings, and there is nothing in the testimony which would sustain the circuit court's ruling. See *People v. Caballero* (1984), 102 Ill. 2d 23, 35-36, 464 N.E.2d 223.

Accordingly, the order denying the motion to suppress is manifestly erroneous (see *People v. Reynolds* (1983), 94 Ill. 2d 160, 165, 445 N.E.2d 766), and we reverse that order and defendant's conviction. We further grant the motion to suppress evidence and remand for a new trial (107 Ill. 2d R. 615(b)), although it would appear highly unlikely that the prosecution would choose to proceed to trial without the evidence which has been suppressed. It is therefore unnecessary to address defendant's remaining contentions.

Reversed and remanded.

NASH and LINDBERG, JJ., concur.