(No. 68964.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. RONALD A. JANIS, Appellee.

*Opinion filed November 30, 1990.*

MILLER, J., concurring in part and dissenting in part.

Neil F. Hartigan, Attorney General, of Springfield, and James E. Ryan, State's Attorney, of Wheaton (Robert J. Ruiz, Solicitor General, Terence M. Madsen and William P. Pistorius, Assistant Attorneys General, of Chicago, and Kenneth R. Boyle and William L. Browers, of the Office of the State's Attorneys Appellate Prosecutor, of Elgin, of counsel), for the People.

Joseph M. Laraia, of Wheaton, for appellee.

JUSTICE WARD delivered the opinion of the court:

The defendant, Ronald Janis, was charged in the circuit court of Du Page County with possession of a stolen motor vehicle (Ill. Rev. Stat. 1987, ch. 95½, par. 4—103(a)(1)), and with possession of a motor vehicle having a vehicle identification number removed (Ill. Rev. Stat. 1987, ch. 95½, par. 4—103(a)(4)). Prior to trial, the defendant moved to suppress evidence of the stolen vehicle, alleging that Villa Park police officers unlawfully entered his private property without a search warrant and searched and seized the stolen vehicle from an area in which he had a justified expectation of privacy. The trial court denied the motion to suppress, holding that the defendant did not have a reasonable expectation of privacy in the area from which the vehicle was seized. Following a jury trial, the defendant was convicted of both offenses and sentenced to 24 months' probation and ordered to pay a fine and make restitution. The appellate court reversed the convictions, holding that the trial court erred in denying the defendant's motion to suppress. (183 Ill. App. 3d 287.) We allowed the State's petition for leave to appeal (107 Ill. 2d R. 315(a)).

Evidence relating to the search and seizure of the stolen automobile was introduced at the hearing on the defendant's motion to suppress and at trial. At the suppression hearing, the defendant testified that he owns and operates a plumbing business (Home Plumbing) located at 223-225 West St. Charles Road in Villa Park, Illinois. The defendant's business fronts on St. Charles Road and is located approximately 100 feet east of the intersection of St. Charles Road and Michigan Avenue.

Immediately in back of the defendant's plumbing supply business is a gravel area where the stolen vehicle

was located. The defendant testified that he uses this gravel area to store air compressors, a soil pump, pipes, and trucks that are not in use. The defendant testified that the only way to gain access to this gravel area is through a private driveway located on residential property directly behind the gravel area. He testified that he owns this residential property and leases the residence to a tenant. The defendant testified that the gravel area cannot be seen from St. Charles Road or from Michigan Avenue, but can be observed by proceeding up the driveway on the leased residential property and onto the property where the plumbing business is operated.

The defendant testified that both the tenants of the residence and vehicles associated with the plumbing business use the private driveway. The tenants have access to the gravel area, which is approximately 40 feet from the driveway, but do not have permission to use it. He testified that vehicles associated with the plumbing business have permission to use the gravel area during business hours and that no one has permission to be in the area when the business is closed. He did admit, however, that "occasionally kids park back there." He stated that the gravel area looks more like a common area than a driveway.

On cross-examination, the defendant testified that his business is part of a continuous building with other stores located on either side of his business. He testified that there is a ceramic tile store directly west of his business and a golf supplies store to the east. He testified that there is a fence on the west side of the gravel area, which partially separates his gravel area from the grassy area behind the ceramic tile store. The fence does not extend the entire length of the gravel area. A pipe rack and a semi-trailer truck separate the east side of the gravel area from the property in back of the golf store.

In an attempt to show that the defendant did not have an expectation of privacy in the gravel area, the State cross-examined him regarding use of the gravel area by tenants and customers of adjoining businesses. The defendant testified that the golf store does not use his driveway to receive deliveries, and instead receives deliveries through the towing business located east of the golf store. He stated, however, that he would not object if the golf store used his driveway to receive deliveries. He testified that customers of the towing business could not pass through his property because the pipe rack and semi-trailer on the east side of his gravel area blocked access to the towing business. The defendant testified that he was aware of the golf store's receiving deliveries through the gravel area behind "the stores."

At this point, the trial court terminated the State's cross-examination of the defendant and asked if the defense had any additional evidence. When the defense said it did not, the court stated that it would hear arguments on whether the defense had introduced enough evidence to shift the burden of going forward to the State. After argument by the prosecution and the defense, the trial court held that the defendant had not demonstrated a reasonable expectation of privacy in the gravel area, that the area was a common area, and that the evidence was not sufficient to shift the burden of going forward to the State. The court denied the motion to suppress and the case proceeded to trial.

At trial, Officer Robert Deevey of the Villa Park police department testified that he was dispatched to 225 West St. Charles Road (the defendant's place of business), on December 2, 1986, at approximately 7:30 p.m., apparently on an anonymous tip, to check for a stolen or abandoned vehicle. Officer Deevey testified that he went to the gravel area in the rear of the building at that address and observed two pickup trucks. One truck was

white and had no license plates. The other was beige and had no hood or bed. The beige truck had license plates which were issued to a 1975 pickup truck with a vehicle identification number (VIN) of CCY245F33013, which was registered to Home Plumbing (the defendant's business.) Officer Deevey looked at the engine in the beige truck and observed that the emission control sticker indicated that the engine was manufactured in 1977.

After making this observation, Officer Deevey returned to the police station and discovered that the VIN of the beige truck was given only to Series 10 trucks with V-8 engines. Deevey returned to the gravel area behind the defendant's business and discovered that the beige truck was a Series 20 truck and had only six, rather than eight, cylinders. Deevey returned to the police station and telephoned the defendant. Apparently Deevey asked the defendant about the trucks on the pretext that a prowler was seen in the gravel area behind the plumbing business. The defendant indicated that he had owned the beige truck for five years and told Officer Deevey to "secure my [license] plates" before arresting the prowler. Shortly thereafter, the defendant called Officer Deevey at the station and told him that he knew nothing about the beige truck and that it must be stolen, because it did not belong to him.

Deevey then returned to the gravel area for a third time, accompanied by two other officers. At this time, the officers opened the door of the beige truck and discovered that the rivets on the VIN plate attached to the door post did not appear to be the original rivets. The officers then towed the vehicle to the city pound and searched it. During the search, an identification plate was found in the cab which had a different VIN from that on the door plate. The number which was found appeared on the stolen-vehicle list. A further examination

of the numbers found on the cab, doors and frame indicated that these parts were from a stolen vehicle.

As stated, the trial court denied the defendant's motion to suppress and the defendant was convicted following a jury trial of possession of a stolen vehicle (Ill. Rev. Stat. 1987, ch. 95½, par. 4—103(a)(1)), and with possession of a motor vehicle having a vehicle identification number removed (Ill. Rev. Stat. 1987, ch. 95½, par. 4—103(a)(4)). The appellate court reversed the defendant's convictions, holding that the trial court should have granted the defendant's motion to suppress. The court held that the defendant had a reasonable expectation of privacy in the gravel area, which was within the "curtilage" surrounding his business, and that the trial court's finding was contrary to the manifest weight of the evidence. 183 Ill. App. 3d 287.

The issue presented is whether the trial court properly concluded that the warrantless physical entry by police into the gravel area behind the defendant's plumbing business was not a "search" within the meaning of the fourth amendment of the United States Constitution. (U.S. Const., amend. IV.) On a motion to suppress evidence, the defendant has the burden of showing that the search and seizure were unlawful. (Ill. Rev. Stat. 1987, ch. 38, par. 114—12; *People v. Neal* (1985), 109 Ill. 2d 216, 218; *People v. Hoskins* (1984), 101 Ill. 2d 209, 212.) A reviewing court will not disturb a trial court's determination on a motion to suppress evidence unless it is contrary to the manifest weight of the evidence. *People v. Neal* (1985), 109 Ill. 2d 216, 218; *People v. Hoskins* (1984), 101 Ill. 2d 209, 212.

The fourth amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." (U.S. Const., amend. IV.) The constitution of Illinois also prohibits unreasonable searches and seizures. (Ill. Const.

1970, art. I, §6.) It has been long recognized that the fourth amendment's prohibition on unreasonable searches and seizures applies to commercial premises as well as private homes. (*New York v. Burger* (1987), 482 U.S. 691, 96 L. Ed. 2d 601, 107 S. Ct. 2636; *See v. City of Seattle* (1967), 387 U.S. 541, 18 L. Ed. 2d 943, 87 S. Ct. 1737; see also *Dow Chemical Co. v. United States* (1986), 476 U.S. 227, 90 L. Ed. 2d 226, 106 S. Ct. 1819.) The Supreme Court has held that one in business, like the occupant of a private home, has a constitutional right to be free from unreasonable official entries onto private commercial premises. *See v. City of Seattle* (1967), 387 U.S. 541, 543, 18 L. Ed. 2d 943, 946, 87 S. Ct. 1737, 1739.

The defendant argues that the fourth amendment's prohibition against unreasonable searches of commercial premises extends to the gravel area immediately behind his plumbing business. He raises two arguments in support of his claim. First, he argues that the gravel area entered by the Villa Park police was part of the protected curtilage of his business. Alternatively, he argues that the police infringed upon his reasonable expectation of privacy in the gravel area. The State responds that the protection afforded to the curtilage of a home under the fourth amendment does not apply to the outdoor areas adjacent to commercial premises. It also argues that the intrusion into the gravel area did not constitute a "search" within the meaning of the fourth amendment because the defendant did not have a reasonable expectation of privacy in that area.

We first consider whether the protection traditionally afforded to the curtilage of a home under the fourth amendment applies to the outdoor gravel area immediately behind the defendant's plumbing business. Although the curtilage concept arose at common law to define the laws of burglary, the Supreme Court has used

the concept in interpreting the reach of the fourth amendment. (*Oliver v. United States* (1984), 466 U.S. 170, 80 L. Ed. 2d 214, 104 S. Ct. 1735.) The term "curtilage" refers to the area immediately surrounding a dwelling house which is so intimately associated with the home and the privacies of life that it is given the same protection under the fourth amendment as is afforded to the home itself. *Oliver v. United States* (1984), 466 U.S. 170, 80 L. Ed. 2d 214, 104 S. Ct. 1735; see also *United States v. Dunn* (1987), 480 U.S. 294, 94 L. Ed. 2d 326, 107 S. Ct. 1134; *Hester v. United States* (1924), 265 U.S. 57, 68 L. Ed. 898, 44 S. Ct. 445.

The defendant, citing *United States v. Swart* (7th Cir. 1982), 679 F.2d 698, claims that the curtilage surrounding a place of business, like the curtilage of a home, is protected under the fourth amendment. In *Swart,* the defendant appealed his conviction for selling and receiving stolen vehicles, alleging that the trial court improperly denied his motion to suppress. There, the police entered property on which the defendant operated a truck repair business to investigate a fire in a vehicle. The officer noted that the vehicle did not have a vehicle identification number and suspected the defendant of running a "chop shop" for the sale of parts of stolen automobiles. The officer left the defendant's premises but returned later and requested permission to look around the premises. Although the defendant's employee denied permission, the officer entered the defendant's premises after the employee left and recorded the VIN's of several vehicles parked outside the repair garage. These VIN's appeared on the stolen-vehicle list.

The court held that the warrantless entry was a search which violated the fourth amendment. It held that the State could not justify the warrantless search on the ground that the garage was open to the public for business because the business was closed at the time of

the entry and there was no evidence that the officer was in an area generally open to the public. The court also held that the search could not be justified under the "open fields" doctrine, because "the cars may have been within the curtilage of the business buildings." *United States v. Swart* (7th Cir. 1982), 679 F.2d 698, 702.

The Supreme Court has not adopted the Seventh Circuit's view that the curtilage concept applies to areas adjacent to buildings not used as dwellings. The Court did refer to the *Swart* decision in a footnote in *Dow Chemical Co. v. United States* (1986), 476 U.S. 227, 239 n.7, 90 L. Ed. 2d 226, 238 n.7, 106 S. Ct. 1819, 1827 n.7, noting that it need not reach the issues raised in *Swart* regarding a "business curtilage," because "that case involved actual physical entry onto the business premises." *Dow Chemical Co.*, 476 U.S. at 239 n.7, 90 L. Ed. 2d at 238 n.7, 106 S. Ct. at 1827 n.7.

The defendant apparently interprets this footnote in *Dow* as acknowledging and adopting the concept of a "business curtilage." We cannot agree with that reading. In *Dow*, the Environmental Protection Agency conducted an aerial surveillance of Dow's industrial plant complex, which had numerous plant structures spread over a 2,000 acre area. Dow maintained elaborate security around the perimeter of the complex, barring ground-level public view of the area, but had not undertaken to shield all the manufacturing equipment within the complex from aerial surveillance. The manufacturer claimed that the entire plant complex was within an "industrial curtilage," and that the EPA's aerial surveillance of the plant was a "search" which violated the fourth amendment. The Court acknowledged that Dow may have had a reasonable expectation of privacy within the interior of the complex's covered buildings. It held, however, that the open areas of the industrial plant complex were not analogous to, and lacked some of the criti-

cal characteristics of, the curtilage of a dwelling. The Court stated that the intimate activities associated with family privacy and the home and its curtilage do not reach the outdoor spaces between the structures and buildings of a manufacturing plant. The Court concluded that the complex was more comparable to an "open field" and, as such, was open or subject to the observation of persons in aircraft lawfully in the public air space above the complex.

The defendant notes that the Court in *Dow* was considering only the lawfulness of observation without physical entry and specifically stated that "[a]ny actual physical entry by EPA into any enclosed area would raise significantly different questions." (*Dow Chemical Co.*, 476 U.S. at 237, 90 L. Ed. 2d at 237, 106 S. Ct. at 1826.) The defendant construes this as demonstrating the Court's intent to apply the curtilage concept in cases such as this, where the police physically enter commercial premises. We cannot agree.

As the *Dow* Court emphasized, the term "curtilage" refers to that area immediately surrounding the home to which extends the intimate activity associated with the sanctity of a person's home and the privacies of life, and which is considered part of the home itself for fourth amendment purposes. (*Oliver v. United States* (1984), 466 U.S. 170, 180, 80 L. Ed. 2d 214, 225, 104 S. Ct. 1735, 1742; see also *California v. Ciraolo* (1986), 476 U.S. 207, 90 L. Ed. 2d 210, 106 S. Ct. 1809.) The area immediately adjacent to a commercial establishment, unlike the curtilage of a home, does not provide the setting for those intimate activities that the amendment is intended to shelter. See *Oliver v. United States* (1984), 466 U.S. 170, 80 L. Ed. 2d 214, 104 S. Ct. 1735; *United States v. Wolfe* (E.D. Pa. 1974), 375 F. Supp. 949, 958 (the term "curtilage" has no application to any building not used as a dwelling); 1 W. LaFave, Search & Seizure

§2.4(b), at 434-35 (2d ed. 1987), quoting *United States v. Wolfe* (E.D. Pa. 1974), 375 F. Supp. 949, 958 ("it is clear that 'the concept of curtilage does not apply to buildings other than dwellings' ").

We consider that the Supreme Court, in *Dow*, has recognized the important distinction between the outdoor areas adjacent to a commercial establishment and the outdoor areas adjacent to a dwelling. Another footnote in *Dow* is of interest. The Court stated: "We find it important that [Dow's complex] is *not* an area immediately adjacent to a private home, where privacy expectations are most heightened." (Emphasis in original.) (*Dow Chemical Co.*, 476 U.S. at 237 n.4, 90 L. Ed. 2d at 237 n.4, 106 S. Ct. at 1826 n.4.) The conclusion to be drawn is that the curtilage concept does not apply to the open areas immediately adjacent to or surrounding a commercial establishment.

Our conclusion that the curtilage concept does not apply to the outdoor areas surrounding a commercial establishment does not answer whether the police entry into the gravel area behind the defendant's plumbing business was a "search" within the meaning of the fourth amendment. As stated in *Katz v. United States* (1967), 389 U.S. 347, 351 n.9, 19 L. Ed. 2d 576, 582 n.9, 88 S. Ct. 507, 511 n.9, the location of the intrusion does not provide a "talismanic solution to every Fourth Amendment problem." Rather, the relevant question is whether the police entered an area in which the defendant had a reasonable expectation of privacy. (*Katz v. United States* (1967), 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507; *Smith v. Maryland* (1979), 442 U.S. 735, 61 L. Ed. 2d 220, 99 S. Ct. 2577.) In answering this question, we must determine whether the defendant, by his conduct, demonstrated a subjective expectation of privacy in the gravel area, and, if so, whether that subjective expectation of privacy is one that society is prepared to recog-

nize as reasonable. *California v. Greenwood* (1988), 486 U.S. 35, 100 L. Ed. 2d 30, 108 S. Ct. 1625; *Smith v. Maryland* (1979), 442 U.S. 735, 61 L. Ed. 2d 220, 99 S. Ct. 2577; *Katz v. United States* (1967), 389 U.S. 347, 361, 19 L. Ed. 2d 576, 587-88, 88 S. Ct. 507, 516 (Harlan, J., concurring).

In determining whether a person has a subjective expectation of privacy in a certain place, it is useful to consider whether there are objective manifestations of the claimed privacy interest. A comparison of the safeguards a person does in fact take with the safeguards he might take, when such actions are feasible and not unreasonably expensive, is a factor to be considered. (*Dow Chemical Co. v. United States* (6th Cir. 1984), 749 F.2d 307, *aff'd* (1986), 476 U.S. 227, 90 L. Ed. 2d 226, 106 S. Ct. 1819.) The evidence introduced at the suppression hearing on this was conflicting.

On the one hand, the defendant admitted that the gravel area was accessible to his tenants and to young people who occasionally parked there, and that the gravel area looked like a common area. In addition, he stated that he would not mind if the golf store used the driveway and gravel area to receive deliveries. There was no evidence that the defendant made any visible efforts to exclude the public from the gravel area such as by posting a "no trespassing" sign at the entrance of the driveway or gravel area or by enclosing the entire gravel area with a fence. (See *Dow Chemical Co. v. United States* (1986), 476 U.S. 227, 90 L. Ed. 2d 226, 106 S. Ct. 1819 (Dow manifested an actual expectation of privacy against ground-level intrusion by maintaining elaborate security but did not manifest any expectation of privacy against aerial surveillance).) In addition, the defendant did permit employees and persons making deliveries to the plumbing business to use the gravel area.

On the other hand, the gravel area behind the defendant's business apparently was not visible from any public way or accessible to the public except through the private driveway on the defendant's leased residential property. In addition, the area was partially enclosed by a fence to the west and a pipe rack to the east. Further, the defendant testified that no one was permitted to use the gravel area except individuals and vehicles associated with the plumbing business during business hours. Thus, it well might have been that the defendant did not expect that the police or members of the public would intrude into the gravel area or inspect property stored there.

A subjective expectation of privacy does not give rise to fourth amendment protection, however, unless society is prepared to accept that expectation as legitimate. The test of legitimacy is not whether a defendant chooses to protect assertedly private activity. Rather the proper inquiry is whether the police intrusion infringed upon the personal and societal values protected by the fourth amendment. See *Oliver v. United States* (1984), 466 U.S. 170, 178, 80 L. Ed. 2d 214, 224, 104 S. Ct. 1735, 1741 (no legitimate expectation of privacy in an open field containing marijuana, even though the field was surrounded by fences posted with "no trespassing signs" and could not be seen from any point of public access).

In determining whether a police intrusion infringes upon personal and societal values, the Supreme Court has considered such factors as the uses to which the area has been put and society's understanding that certain areas deserve particular protection from governmental invasion. (*Oliver v. United States* (1984), 466 U.S. 170, 178, 80 L. Ed. 2d 214, 224, 104 S. Ct. 1735, 1741.) The defendant in this case argues that the gravel area behind his store is entitled to protection under the fourth amendment because it is used as part of his commercial

establishment. According to the defendant's testimony at the suppression hearing, the gravel area is located directly behind the defendant's business and is used to store pipes and other equipment used in the business. In addition, the gravel area is used by vehicles associated with the plumbing business. This evidence, while not conclusive, does support the defendant's claim that the gravel area is an outdoor extension of his commercial premises.

The protection afforded to offices and commercial buildings under the fourth amendment is based upon societal expectations that have deep roots in the history of the amendment. (*Oliver v. United States* (1984), 466 U.S. 170, 178 n.8, 80 L. Ed. 2d 214, 224 n.8, 104 S. Ct. 1735, 1741 n.8; see also *Marshall v. Barlow's, Inc.* (1978), 436 U.S. 307, 56 L. Ed. 2d 305, 98 S. Ct. 1816.) The fact that the area at issue here is out-of-doors does not necessarily deprive it of protection under the fourth amendment. Outdoor commercial premises, like the interior of commercial buildings, are protected from unreasonable searches under the fourth amendment. This is particularly true in cases where the business, by its nature, must be conducted outside. See *Commonwealth v. Lutz* (1986), 512 Pa. 192, 516 A.2d 339 (the defendant had a reasonable expectation of privacy in the outdoor areas of his enclosed waste-disposal site); *New York v. Burger* (1987), 482 U.S. 691, 96 L. Ed. 2d 601, 107 S. Ct. 2636 (warrantless search of an automobile junkyard pursuant to a State statute fell within the exception to the fourth amendment's warrant requirement because it was an administrative inspection of a pervasively regulated industry); *Donovan v. Dewey* (1981), 452 U.S. 594, 69 L. Ed. 2d 262, 101 S. Ct. 2534 (warrantless search of stone quarries pursuant to a Federal statute fell within the exception to the fourth amendment's warrant re-

quirement because it was an administrative inspection of a pervasively regulated industry).

The fact that the gravel area may be part of the defendant's commercial plumbing business does not, of course, mean that the defendant had a "legitimate" expectation of privacy in the area. The Supreme Court has held that the privacy expectation in commercial premises is different from, and less than, the privacy interest in a private home (*New York v. Burger* (1987), 482 U.S. 691, 96 L. Ed. 2d 601, 107 S. Ct. 2636), and various police investigative procedures may be directed at such premises without constituting a fourth amendment search (*See v. City of Seattle* (1967), 387 U.S. 541, 18 L. Ed. 2d 943, 87 S. Ct. 1737; *Dow Chemical Co. v. United States* (1986), 476 U.S. 227, 90 L. Ed. 2d 226, 106 S. Ct. 1819; 1 W. LaFave, Search & Seizure §2.4(b), at 429 (2d ed. 1987)). Thus, the police need not obtain a warrant to enter that part of commercial property which is open for public use, for "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." (*Katz v. United States* (1967), 389 U.S. 347, 351, 19 L. Ed. 2d 576, 582, 88 S. Ct. 507, 511.) A warrant is necessary only to search those areas of commercial premises from which the public has been excluded. (See *See v. City of Seattle* (1967), 387 U.S. 541, 18 L. Ed. 2d 943, 87 S. Ct. 1737; *Air Pollution Variance Board v. Western Alfalfa Corp.* (1974), 416 U.S. 861, 40 L. Ed. 2d 607, 94 S. Ct. 2114.) As Justice Brennan has observed:

"For a homeowner to preserve Fourth Amendment protection in the area immediately surrounding the residence, he or she must not conduct an activity or leave an item in the plain view of those outside that area. The occupant of a commercial building must take the *additional* step of affirmatively barring the public from the area because a business operator has a reasonable expectation of

privacy only in those areas from which the public has been excluded." (Emphasis in original.) *United States v. Dunn* (1987), 480 U.S. 294, 316, 94 L. Ed. 2d 326, 344, 107 S. Ct. 1134, 1147 (Brennan, J., dissenting).

In this case, the trial court concluded that the gravel area was a common area in which the defendant had no reasonable expectation of privacy. The term "common area" suggests an area left open for common or public use. The testimony at the suppression hearing, however, tended to support the defendant's contention that the gravel area in question is an area from which the public is excluded. The defendant testified that the gravel area is not open to the public for parking or any other use, and is not visible from any point of public access. Apparently, the area is not accessible from any public ingress or egress and is not used by tenants or customers of the stores located on either side of the plumbing business. According to the defendant's testimony, no one was permitted to use the gravel area other than employees and other persons associated with the plumbing business during business hours. No one had permission to be in the gravel area at the time the police entered the area, because the business was closed. Contrary to the appellate court's holding, this evidence suggests that the public was excluded from the gravel area and that police therefore were not in a place where they had a right to be when they observed the stolen automobile behind the defendant's store. *Cf. People v. Caserta* (1984), 123 Ill. App. 3d 608 (no fourth amendment search occurred when the police entered a parking lot adjacent to a restaurant which was open to the public and observed a gun between seats of an automobile parked there).

In light of the evidence that the gravel area was a part of the defendant's commercial establishment and that the public was excluded from the area, we cannot agree with the trial court's conclusion that the gravel

area was a common area in which the defendant had no reasonable expectation of privacy. The evidence introduced at the suppression hearing was sufficient to establish a *prima facie* case implicating the fourth amendment.

The record shows that the trial court interrupted the State's cross-examination of the defendant in the middle of a question, stating that the defendant had not introduced sufficient evidence to shift the burden of going forward to the State. As a result, the State was never given an opportunity to contradict the defendant's testimony at the hearing. The State argues that the cause therefore should be remanded to the trial court to allow the State to rebut the evidence which the defendant introduced at the suppression hearing. The defendant responds that the State waived its right to request remandment by failing to raise the issue before the appellate court. The appellate court likewise concluded that remandment was improper because the State had waived its right to request such relief.

This court has recently held, however, that when the State is the prevailing party on a motion to suppress, it would be unfair to hold that it has waived any argument which might have been raised in support of the trial court's ruling in its favor. (*People v. Foskey* (1990), 136 Ill. 2d 66; *People v. Keller* (1982), 93 Ill. 2d 432.) We conclude that remanding this cause to the trial court for continuation of the suppression hearing is appropriate. The State should have an opportunity to present evidence which might contradict the defendant's claim that the gravel area is to be considered part of his commercial establishment. The State should also have an opportunity to show that the defendant had no legitimate expectation of privacy in the gravel area. For example, the State might introduce evidence that other stores used the defendant's gravel area to receive deliveries, that an

alley connects the defendant's gravel area to the areas behind the other stores, or that the gravel area is commonly used by the general public for parking or other purposes. (See *United States v. Edmonds* (5th Cir. 1980), 611 F.2d 1386 (although there was a "no trespassing" sign at entrance road leading to the dock where marijuana was found, the evidence showed that there was an implied invitation to enter, as the reputation in the community was that the dock was open to and used by the general public).) The State might also raise some other theory to support the warrantless entry upon the defendant's premises. Accordingly, we reverse the trial court order denying the defendant's motion to suppress and remand to the trial court for further consideration of the fourth amendment issue.

The defendant raises several other allegations of trial error in his brief. Although the defendant raised the same allegations of errors in the appellate court, that court considered it unnecessary to address those issues in view of its conclusion that the evidence of the stolen vehicle should have been suppressed. The defendant argues that this court should now consider these alleged trial errors. The State, which did not address these additional allegations of error in its brief, filed a motion in this court to strike that portion of the defendant's brief discussing the errors. The State in its motion argues that issues not decided by the appellate court are not properly directed to this court and that the appropriate procedure is to remand the cause to the appellate court for consideration of these remaining questions. *People ex rel. Hahn v. Hurley* (1956), 9 Ill. 2d 74.

We agree with the State that in cases where trial errors were raised but not ruled upon in the appellate court, it is ordinarily appropriate to remand the cause to the appellate court for consideration of the alleged errors. (*People v. Murrell* (1975), 60 Ill. 2d 287, 292.)

Here, however, consideration of these alleged errors may be unnecessary if the trial court on remand holds that the evidence of the stolen vehicle should have been suppressed. It would appear unlikely that the State would be able to continue the prosecution if such evidence should be suppressed. Accordingly, in the exercise of our supervisory authority, we vacate the judgments of the appellate and circuit courts and remand this cause to the trial court to reopen the hearing on the defendant's motion to suppress evidence of the stolen vehicle. The State and the defendant shall have an opportunity to present additional evidence on the question of whether the defendant's fourth amendment rights were violated when the police entered the gravel area behind the plumbing business. If the court determines that such a violation occurred, the court is directed to enter an order suppressing evidence of the stolen vehicle and granting the defendant a new trial. The State will have the opportunity to appeal from that order. (107 Ill. 2d R. 604(a).) If the court, instead, determines again that the search did not violate the fourth amendment and that the defendant's motion to suppress was properly denied, the court is directed to reinstate the defendant's convictions and sentence. The defendant will have the right to appeal that judgment (107 Ill. 2d R. 606), and may renew his objections to the errors which allegedly occurred at trial in that appeal.

> *Appellate court judgment vacated;*
> *circuit court judgment vacated;*
> *cause remanded with directions.*

JUSTICE MILLER, concurring in part and dissenting in part:

I agree with the majority that the premises at issue here do not fall within the curtilage concept. I do not agree, however, with the court's additional holding that

the cause must be remanded for a continuation of the suppression hearing. In my view, the evidence that was presented at the hearing adequately demonstrates that the defendant did not have a constitutionally protected expectation of privacy in the area searched.

As the majority notes, determining whether a person may claim the protections guaranteed by the fourth amendment requires consideration of two separate questions: whether the individual "manifested a subjective expectation of privacy in the object of the challenged search," and, if so, whether the expectation is one that society is willing to recognize as reasonable. (*California v. Ciraolo* (1986), 476 U.S. 207, 211, 90 L. Ed. 2d 210, 215, 106 S. Ct. 1809, 1811. See also *Smith v. Maryland* (1979), 442 U.S. 735, 740-41, 61 L. Ed. 2d 220, 226-27, 99 S. Ct. 2577, 2580.) Based on the evidence that was adduced at the suppression hearing, I would conclude that the defendant did not have a subjective expectation of privacy in the premises in question, or at least an expectation that we should recognize as reasonable.

Although the gravel area where the vehicles were parked was situated behind the defendant's commercial building and did not enjoy direct access to the street, other evidence suggested that the area was accessible to persons in the vicinity and that the defendant did not otherwise seek to exclude the public from it. The defendant had the burden of demonstrating that the search was illegal (Ill. Rev. Stat. 1987, ch. 38, par. 114—12(b)), and the trial court's decision will not be reversed unless it is manifestly erroneous (*People v. Saechao* (1989), 129 Ill. 2d 522, 534). The trial judge was in the best position to resolve the parties' conflicting proof, and I would uphold that decision.