**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Dale A. SWART, Defendant-Appellant.**

**No. 81–1938.**

United States Court of Appeals, Seventh Circuit.

Argued April 13, 1982.

Decided June 3, 1982.

Rehearing Denied Aug. 31, 1982.

Julius Lucius Echeles, Chicago, Ill., for defendant-appellant.

Patricia J. Gorence, Asst. U. S. Atty., Lawrence O. Anderson, U. S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, GIBSON, Senior Circuit Judge,[*] and CUDAHY, Circuit Judge.

GIBSON, Senior Circuit Judge.

Dale A. Swart appeals his conviction for the sale and receipt of stolen vehicles in violation of 18 U.S.C. § 2313 (1976). He was convicted after a bench trial of four counts of receiving stolen cars and one count of receiving and selling a stolen car. Before trial, Swart moved to suppress all evidence seized and leads derived by police from a warrantless search of Swart's business premises. A hearing was held before a magistrate on this motion, and the magistrate recommended that the motion to suppress be denied. The district court adopted the magistrate's findings and conclusions.

Because we find that the search violated the Fourth Amendment,[1] we reverse Swart's conviction and remand to the district court for a new trial.

I. Facts

Swart owned and operated "The Truck Stop," a business for repairing and rebuilding automobiles and trucks, located in Kenosha County, Wisconsin. On September 14, 1979, at about 4:00 p. m., a vehicle fire occurred at The Truck Shop. Deputy Sheriff Daniel Homs investigated the fire soon after it occurred. He noticed that the subject of the fire, a Mustang, did not have a vehicle identification number. Homs left the area and contacted Detective Dale Crichton. Because of Homs's observations and a conversation Crichton had had with Swart several months earlier, Homs and Crichton suspected Swart of running a "chop shop" for the sale of stolen cars. Homs and Crichton returned to The Truck Shop.

When the officers returned, they spoke with Swart's employee, Dennis Hamil, near a garage on the premises. Hamil told them Swart was not present. Crichton then asked to look around; he later testified that he was referring to looking around the garage. Hamil said he did not have authority to let the officers do that, and suggested they wait for Swart. The officers then returned to their vehicles in front of the garage and waited. Twenty minutes later, Hamil left. No one else was on the business premises, and Swart did not return.

After Hamil left, the search at issue took place. The officers entered the premises and looked at the cars outside the garage. They took down vehicle identification numbers. The officers left, and Crichton found that one of the vehicle identification numbers belonged to a stolen car. He obtained a search warrant and then obtain-

[*] The Honorable Floyd R. Gibson, United States Senior Circuit Judge for the Eighth Circuit, sitting by designation.

1. The Fourth Amendment reads:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

ed evidence which was the basis for Swart's conviction. The United States does not argue that the evidence obtained pursuant to the search warrant was not obtained by exploitation of the initial, allegedly illegal, search; therefore if the warrantless search was illegal, the evidence obtained with the warrant must also be excluded. *See Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963).

## II. Discussion

■■■ A Fourth Amendment claim requires a two-step analysis. The first question is whether a Fourth Amendment right exists. The second question is whether, in a case where there is a Fourth Amendment right, the search and seizure were reasonable.[2] The major issues in the first question are whether governmental conduct is involved, *see, e.g., Burdeau v. McDowell*, 256 U.S. 465, 475, 41 S.Ct. 574, 576, 65 L.Ed. 1048 (1921); *Coolidge v. New Hampshire*, 403 U.S. 443, 487, 91 S.Ct. 2022, 2048, 29 L.Ed.2d 564 (1971), and whether there is a reasonable expectation of privacy in the items seized. *See, e.g., Katz v. United States*, 389 U.S. 347, 351–52, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967); *Cardwell v. Lewis*, 417 U.S. 583, 590–91, 94 S.Ct. 2464, 2469, 41 L.Ed.2d 325 (1974); *Robbins v. California*, 453 U.S. 420, 424, 101 S.Ct. 2841, 2845, 69 L.Ed.2d 744, 749 (1981); *id.* at 428,

101 S.Ct. at 2847, 69 L.Ed.2d at 752 (Powell, J., concurring); *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768, 775 (1981). The major issues in the second question are whether a valid search warrant was obtained and, if not, whether there was something to justify a warrantless search, such as exigent circumstances. *See, e.g., Johnson v. United States*, 333 U.S. 10, 14–15, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948); *Mincey v. Arizona*, 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978); *Belton*, 453 U.S. at 457, 101 S.Ct. at 2862, 69 L.Ed.2d at 773.

■■■ In the instant case, the Government's argument that a warrant was unnecessary goes to the first step of the Fourth Amendment analysis: the Government's principal assertion is that Swart did not have a reasonable expectation of privacy in the vehicle identification numbers.[3] It bases this assertion on two points: (1) Swart did not have a reasonable expectation of privacy in the vehicle identification numbers because recording them involved a minimal intrusion into his privacy, and (2) Swart did not have a reasonable expectation of privacy in the area outside the garage where the officers were standing when they recorded the vehicle identification numbers.[4]

2. For an excellent analytical framework for the law of search and seizure, see Whitebread, Criminal Procedure, ch. 4 (1980).

3. The Government's brief has one sentence suggesting that there were exigent circumstances justifying a warrantless search. The brief states: "The evidence was highly mobile and his [Swart's] employee could have alerted the interested parties of the situation." Brief of Appellee at 9–10. There is no citation to the record to support this assertion. Indeed, the mobility assertion is contradicted ' in the Government's own brief, where it states: "Deputy Homs also observed several late model vehicles in apparently good condition in various stages of disassembly." *Id.* at 3, citing Appendix I at p. 2. (This citation is apparently incorrect. The correct citation would be Appendix I at p. 3.) Under the facts as developed in this case, there was not evidence of mobility or other exigent circumstances to justify a warrantless search.

The magistrate may have considered exigent circumstances an important factor. *See* Magistrate's Recommendation, Appendix I at p. 9. Nevertheless, there were not sufficient findings of exigent circumstances. There was no finding as to why the officers believed the cars or their parts could be surreptitiously transported, or why obtaining a warrant would have been difficult. Each officer apparently had his own car, *id.* at 4, and even if they had only one car, there was no explanation why one of them could not have sought the warrant while the other remained at The Truck Shop.

4. The Government does not present the issues with this clarity. Our reading of the Government's brief leads us to conclude that two such distinct arguments are being made. The first is at pp. 8–9 of the Government's brief; the second is at pp. 6–8 and 9–10.

■ The first issue can be disposed of easily. The Government cites four cases for the proposition that a search for vehicle identification numbers is not a search within the meaning of the Fourth Amendment. *United States v. Duckett*, 583 F.2d 1309, 1313 (5th Cir. 1978); *United States v. Johnson*, 431 F.2d 441, 441 (5th Cir. 1970), *en banc; United States v. Graham*, 391 F.2d 439, 443 (6th Cir.), *cert. denied*, 393 U.S. 941, 89 S.Ct. 307, 21 L.Ed.2d 278 (1968); *Cotton v. United States*, 371 F.2d 385, 393–94 (9th Cir. 1967). All these cases are distinguishable because in the above cases the police had a right to be where they were when they saw the vehicle identification numbers. *Duckett*, 583 F.2d at 1313; *Johnson*, 431 F.2d at 441; *Graham*, 391 F.2d at 443; *Cotton*, 371 F.2d at 394. The fallacy of the Government's position can be seen by looking at a logical extension of the Government's argument. The Government's theory would allow police to enter a closed garage or closed premises to get to a car's vehicle identification number. As indicated by the above cases, the legality of the search is contingent on the police having a right to be where they were when they discovered the item.

Thus, the key issue is whether the police had the right to be standing near the cars on Swart's property; specifically, did Swart have a reasonable expectation of privacy in that part of his property?

■ The fact that the search was on private property and unconsented to does not necessarily establish a reasonable expectation of privacy. The Supreme Court stated in *Katz*: "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." 389 U.S. at 351, 88 S.Ct. at 511. After examining the facts we conclude that in light of the location of the cars, the vehicle identification numbers were not exposed to the public for Fourth Amendment purposes.

The Government attempts to justify the presence of the officers on a business's implied invitation to the public to enter its premises. It is true that the Supreme Court has recognized that a business, by its nature, may open itself to intrusions that would not be permissible in a purely private context. *G. M. Leasing Corp. v. United States*, 429 U.S. 338, 353, 97 S.Ct. 619, 628, 50 L.Ed.2d 530 (1977). The Court has stated: "A government agent, in the same manner as a private person, may accept an invitation to do business and may enter the premises for the very purposes contemplated by the occupant." *Lewis v. United States*, 385 U.S. 206, 211, 87 S.Ct. 424, 427, 17 L.Ed.2d 312 (1966).

■ On the other hand, the Court has limited the scope of this business-premises doctrine. The Court there said: "Of course, this does not mean that, whenever entry is obtained by invitation and the locus is characterized as a place of business, an agent is authorized to conduct a general search for incriminating materials .... " *Id.* The Court has also held that a warrant is necessary for a search of the portions of commercial premises which are not open to the public, *See v. City of Seattle*, 387 U.S. 541, 545, 87 S.Ct. 1737, 1740, 18 L.Ed.2d 943 (1967), and government agents cannot attempt to justify a warrantless search on a claim of a reduced expectation of privacy on business premises when the agents do not see the items as a customer would ordinarily see them. *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 329, 99 S.Ct. 2319, 2325, 60 L.Ed.2d 920 (1979).

In the instant case the facts do not support any diminished expectation of privacy to justify a warrantless search. The Government is correct in asserting that the officers could enter the premises based on a general invitation to the public to enter. However, there was no such offer at the time and place the officers searched. First, the officers knew the business was closed. Commercial establishments do not extend an implicit invitation to enter during non-business hours or when there are no employees on the premises. Second, the officers had no reason to believe that the cars were in an area generally open to the public. For instance, there was no evidence that there were customers near the cars.

Third, even if the officers had looked at the cars when the business was open and could reasonably infer that the cars were in an area generally open to the public, they were expressly told by Swart's employee that he could not give them permission to look around the premises. Thus, the officers had no reason to believe there was a general invitation to enter the premises. If the officers had started to look around without asking for permission, we conceivably would be presented with a different situation, but presumably Hamil would have told them to stop the search and they would have lost any authority they had to be in that area.[5] Moreover, even if Hamil's denial of permission to search only applied to the garage, the fact that the business was closed would prevent application of an unconsented business-premises exception in this case.

Finally, the "open fields" doctrine does not make the search in this case permissible. The doctrine was announced in *Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924). Justice Holmes, speaking for the Court, stated: "[T]he special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers, and effects,' is not extended to open fields." *Id.* at 59, 44 S.Ct. at 446. Even if the search had taken place in an open field, the search would not necessarily be legal because in *Katz* the Court held that the location of a search does not provide a "talismanic solution to every Fourth Amendment problem." 389 U.S. at 351 n.9, 88 S.Ct. at 511 n.9. The Court stated: "[T]his effort to decide whether or not a given 'area,' viewed in the abstract, is 'constitutionally protected' deflects attention from the problem presented by this case. For the Fourth Amendment protects people, not places." *Id.* at 351, 88 S.Ct. at 511 (footnote omitted). In any event, this case does not involve an open field but outside

business premises that were closed for the day.

This court has applied *Hester* to conclude that only the curtilage of a private dwelling or business is entitled to Fourth Amendment protection. *United States ex rel. Saiken v. Bensinger*, 546 F.2d 1292, 1297 (7th Cir. 1976), *cert. denied*, 431 U.S. 930, 97 S.Ct. 2633, 53 L.Ed.2d 245 (1977). In *Saiken*, the court, without citing *Katz*, concluded that a goosehouse approximately 400 feet from a farm dwelling was outside the curtilage of the farmhouse and thus no warrant was necessary for a search, *id.* at 1295–97, and suggested that anything more than 75 feet from a dwelling is outside the curtilage. *Id.* at 1297. The record does not make clear the distance from the cars to the garage. Nevertheless, *Saiken* is distinguishable from the instant case. First, *Katz* would preclude an absolute rule that anything beyond a specific distance from a dwelling or business is in an area unprotected by the Fourth Amendment. Second, in the instant case there were sheds near the garage and the affidavit supporting the search warrant said the cars were in the area surrounding the sheds and garage. Therefore, the cars may have been within the curtilage of the business buildings. If it is then shown that the cars were not within the curtilage or within an area then closed to the public, the district judge may properly deny a renewed suppression motion. If this case is retried, the facts can be clarified on this issue.

### III. Conclusion

█ In the context of the factual record made, Swart had a reasonable expectation of privacy in the vehicle identification numbers where the cars were located on his property, and that expectation was not diminished by the fact that the cars were on closed business premises. On the facts represented to us, the warrantless search violated the Fourth Amendment, so the convic-

---

**5.** We are not faced with the issue of whether a person who extends an invitation to the public to enter can deny access to police officers. Although the Supreme Court has apparently not decided that issue, it has held that a congregation of a large number of persons in a

private home does not make it open to the police. The rationale was that such a congregation does not transform a residence into a "public establishment" or a "public place." *Recznik v. City of Lorain*, 393 U.S. 166, 168–69, 89 S.Ct. 342, 344, 21 L.Ed.2d 317 (1968).

tion is reversed and the case remanded to the district court for a new trial.