In the
United States Court of Appeals
For the Seventh Circuit

No. 01-1375

United States of America,

Plaintiff-Appellee,

v.

Casey J. Tolar, Jr.,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 CR 940--Charles P. Kocoras, Judge.

Argued September 19, 2001--Decided October 9, 2001

   Before Easterbrook, Diane P. Wood, and
Williams, Circuit Judges.

   Easterbrook, Circuit Judge.  C&I
Specialized, Inc., an apparently
legitimate business, was a front for a
drug-running operation. Acting on a tip,
agents entered C&I's business premises in
Harvey, Illinois, at 10 a.m. on a
Thursday morning and asked Casey Tolar,
C&I's owner, for permission to examine
the cargo of a truck that had recently
arrived. Tolar signed a consent form.
During the ensuing search the agents
found 477 kilograms of cocaine and 2,350
kilograms of marijuana hidden inside a
few of the large propane tanks in the
truck's cargo. Tolar has been sentenced
to life imprisonment for this large-scale
drug operation.

   Given the outcome of the search, Tolar's
best chance lay in asking the district
court to suppress the evidence. He
offered two principal theories: first,
that his consent was the fruit of an
unlawful entry by the agents; second,
that the consent was in any event
involuntary. After a hearing, the
district court rejected both theories and
denied the motion to suppress. Tolar
renews both contentions on appeal,
leading with the argument that, because
C&I's business premises were enclosed by
a chain-link fence (topped by barbed

wire) and a sign warned illegal parkers that their cars would be towed, the agents were not entitled to enter even though another sign stated that the business was open Monday through Friday from 8 a.m. to 6 p.m., and the gate to the lot was open.

Tolar's argument starts with the major premise that the fourth amendment forbids all trespasses, adds the minor premise that the entry was a trespass despite the open gate and the open-for-business sign (that sign was the doing of a prior owner, Tolar insists, and did not reflect his practices), and concludes that the unauthorized entry therefore was unlawful. Then Tolar treats the consent as the "fruit of the poisonous tree" and argues that the evidence seized on its authority must be suppressed. The "fruits" argument is a doubtful one. The statements of a person held in unlawful custody may be tainted, see Brown v. Illinois, 422 U.S. 590 (1975), but Tolar was not detained until after the drugs were found, and the police did not induce the consent by confronting Tolar with any evidence improperly seized. During their time inside the fence (and before the consent) they saw nothing that they had not already seen from outside the fence. The view from outside, which revealed that Tolar and a companion were starting to unload the cylinders from the truck, did not invade any of Tolar's privacy interests, and hence could not have violated the fourth amendment. See Boyd v. United States, 116 U.S. 616, 628 (1886). Arguments about causation may be put to one side, however, because the agents' entry did not violate the fourth amendment in the first place.

Only a rule equating trespass with a violation of the Constitution could support Tolar's position. Yet a trespass is neither necessary nor sufficient for constitutional purposes. Wiretaps do not entail trespasses, but they may invade privacy and are treated as searches; other investigative steps, which do involve trespass, pose no risk of invading privacy and hence are not deemed searches or seizures. See Rakas v. Illinois, 439 U.S. 128, 143 (1978) (remarking that the fourth amendment has been decoupled from the law of trespass). To take one example close to the mark, the Supreme Court has held that agents

did not violate the fourth amendment when they entered a private parking lot to seize a car. G.M. Leasing Corp. v. United States, 429 U.S. 338, 351-55 (1977). See also United States v. Swart, 679 F.2d 698, 701 (7th Cir. 1982). Likewise courts do not exclude evidence just because police reach a suspect's door by cutting across the yard (trampling on the rhododendrons in the process) rather than using the pathway, or because they enter a home's curtilage to seize garbage in which there is no privacy interest. See United States v. Redmon, 138 F.3d 1109 (7th Cir. 1998) (en banc); United States v. Dunkel, 900 F.2d 105 (7th Cir. 1990), remanded on other grounds, 498 U.S. 1043 (1991), decision on remand, 927 F.2d 955 (7th Cir. 1991). Crossing the threshold of a home would be a different matter, in light of the special status dwellings enjoy under the Constitution. See Kyllo v. United States, 121 S. Ct. 2038 (2001); Sparing v. Olympia Fields, No. 00-1021 (7th Cir. Sept. 19, 2001), slip op. 6-11. Businesses such as C&I's lot that can be observed by anyone passing on the street lack any comparable privacy interest. An open gate invites entry, and a chain-link fence does little to assert a privacy interest (as opposed to a property interest) in details visible from outside the fence. Agents would have needed cause, and perhaps a warrant or equivalent order, to enter in order to open containers, take soil samples, or otherwise investigate aspects of the lot that the public could not observe from outside. Compare New York v. Burger, 482 U.S. 691 (1987), with United States v. Tarkowski, 248 F.3d 596 (7th Cir. 2001). But they did none of these things--did not conduct any form of search--and so did not violate the fourth amendment by entering the lot in order to find the owner and ask his permission to do more.

As for the search: The district court found that Tolar's consent and subsequent inculpatory statements were voluntary. Both the agents and Tolar's companion testified that the agents entered peaceably and behaved amicably. Tolar represented on the consent form that no threats had been made. He testified otherwise, but the district judge did not commit a clear error in believing the agents, Tolar's companion, and the statements Tolar himself made when giving consent. See Anderson v. Bessemer City,

470 U.S. 564, 570 (1985). Given the court's findings of fact, the consent is unexceptionable. See Ohio v. Robinette, 519 U.S. 33 (1996); Schneckloth v. Bustamonte, 412 U.S. 218 (1973).

Only one decision affecting the sentence has been contested. The district court concluded that Tolar's ability to drive an 18-wheel rig was a special skill "that significantly facilitated the commission or concealment of the offense" and earned a two-level increase under U.S.S.G. sec.3B1.3. Tolar recognizes that United States v. Lewis, 41 F.3d 1209, 1214 (7th Cir. 1994), deems the ability of an over-the-road truck driver a special skill that can lead to an enhancement, but he insists that this skill did not facilitate his particular offense. The district judge was entitled to (and did) find otherwise. Tolar's skill enabled him to use C&I as a front for transporting large quantities of drugs. He was harder to catch than the normal drug courier and able to move more per trip. On both accounts an enhancement was proper.

Affirmed