UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 19, 2005
Decided July 12, 2005

**Before**

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 04-1331

|  |  |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Western District of Wisconsin |
| *v.* | No. 03-CR-094-S |
| MARTIN L. THOMPSON, *Defendant-Appellant.* | John C. Shabaz, *Judge.* |

**O R D E R**

Martin Thompson pleaded guilty to possessing pseudoephedrine knowing that it would be used to manufacture methamphetamine, 21 U.S.C. §841(c)(2), and was sentenced to 100 months' imprisonment. In the plea agreement he reserved the right to appeal the denial of his motion to suppress evidence. He argues that the state warrant authorizing the search of his rented trailer home was invalid because the most significant information supporting the warrant was stale, some of the information was gathered when police intruded into the curtilage of his house without a search warrant, and the officer who wrote the supporting affidavit left out material information. We reject Thompson's contentions and affirm.

On May 5, 2003, a state magistrate issued a warrant to search Thompson's residence on information that he was involved in manufacturing methamphetamine on his rental property. The warrant was supported by an affidavit from Special Agent Peters of the Wisconsin Department of Justice. In his affidavit Peters included information he obtained from Kevin Lee Miller, who knew Thompson; from a preliminary warrantless search of Thompson's yard; and from observations

of Miller's house.

In his affidavit, Agent Peters states that he learned from Investigator Sullivan of the Monroe County Sherriff's Department that a week earlier Miller had admitted teaching Thompson to make methamphetamine. Miller said that he and Thompson used to make one-ounce quantities of the substance twice per week at Thompson's home. He also admitted that he and Thompson stole propane tanks from forklifts at local co-ops for use during the manufacturing process. The affidavit includes no other information about Miller or his relationship to Thompson.

Agent Peters goes on to describe his own observations during a warrantless search of the property Thompson rented at 26023 Magnum Road. Peters and investigator Sullivan went to the location on April 29 with the landlord's permission and scouted around the yard. Peters recounts in his affidavit that he found a "burn-pile" with "at least 14 burned aerosol cans . . . consistent in size and shape of cans of starting fluid . . . and numerous rectangular aluminum containers." Peters explains that starting fluid and aluminum containers are used in the manufacturing process. Through the window of a utility trailer 50 feet from the house, Peters also saw two large "pump-style" squirt guns that he concluded could be used as "HCL gas generators" in the manufacturing process. And through the window of a gray school bus he saw a propane tank like those used on a forklift; such tanks, he explained, are often used often used by methamphetamine manufacturers to store anhydrous ammonia.

Agent Peters also states in his affidavit that on April 29 he interviewed Victoria Gilbertson, a domestic violence intervention program coordinator, who told him that she visited the home of Lisa Miller, the wife of Kevin Miller, on April 24 (the Millers are married, but Peters states that at times they maintain separate residences). That day Gilbertson saw a white lumpy substance in a tupperware container in the trunk of Lisa's car, which, from Gilbertson's description, Peters concluded was consistent with methamphetamine. According to Gilbertson, Lisa flushed the substance down the toilet, saying, "Oh my God, they're trying to frame me." Gilbertson also saw in a small waste basket in the garage numerous split and torn-apart batteries that Peters surmised had been stripped of their lithium for use in the manufacture of methamphetamine. Peters also learned from Investigator Sullivan that local law enforcement officers had been inside Lisa's house on April 24 and observed numerous syringes.

Finally, Agent Peters states in his affidavit that Investigator Sullivan told him on April 29 that two propane tanks had been stolen from the Cashton Co-op. Peters also learned that two more propane tanks had been reported stolen from the co-op in March. And the chief of police in Cashton, Wisconsin, told Peters that on April 30 he saw Miller carrying personal belongings out of Lisa Miller's house including a propane tank with an attached adapter.

Law enforcement officers executed the search warrant on May 6, 2003, and found several firearms; small amounts of methamphetamine, cocaine, and marijuana; and evidence of methamphetamine manufacture including approximately one hundred 240mg pseudoephedrine tablets and empty boxes from another one hundred tablets, a cylinder that tested positive for anhydrous ammonia, three gallons of Coleman fuel, two HCL gas generators with hoses, and nine starter fluid spray bottles. Thompson was found at his workplace and arrested for manufacturing methamphetamine, possession of controlled substances, and theft of anhydrous ammonia. He was initially charged by state authorities.

In a motion to suppress evidence in state court, Thompson argued that the search warrant was invalid for two reasons: 1) part of the information in Agent Peters' supporting affidavit was obtained in violation of the Fourth Amendment because Peters and Investigator Sullivan searched the grounds of his house without a warrant; and 2) Peters omitted information material to the state magistrate's finding of probable cause. The material that was omitted, he said, was: (a) the "burn pile" contained, not aerosol cans, but only plastic caps that could have come from all kinds of aerosol products, (b) the squirt guns were in their original packaging and were located in a trailer with carnival plates that also contained cotton candy and snow cone machines, (c) the propane tank was aluminum in color and according to Thompson this precluded its use with anhydrous ammonia, and (d) the affidavit failed to provide the judge with any information about Miller's credibility or his motive for informing against Thompson.

At an evidentiary hearing in state court on his motion, Thompson developed his argument that Miller was an unreliable informant, and painted a more detailed picture of his yard and the incriminating items found there. According to the testimonies of Officer Sullivan and Officer Perkins, Miller and his wife had been arrested for a domestic dispute, charged with disorderly conduct (a charge that does not dictate a mandatory arrest), and taken to the sherriff's department. Concerned that his wife might be prosecuted, Miller informed on Thompson, with whom he seemed particularly angry because Miller suspected him of hanging around his wife. In addition Miller had a criminal record, and had used drugs within the 24 hours prior to the interview. Sullivan next testified about the search of Thompson's property, and described Thompson's residence, which consisted of a blue and white trailer house, and a bus and trailer about 20 feet to the northwest of the residence. He recalled no noticeable property lines or fences except for an electric fence to the north of the property. Among his discoveries, Sullivan recounted finding a "burn pile" fifteen feet to the rear of the residence and visible from the road where he saw aerosol tops, and some aerosol cans. He also observed, by peering into the bus from the driveway, a propane tank consistent with those from forklifts, but didn't recall seeing any squirt guns. Thompson, who also testified, clarified that his property is a 120-foot square parcel, and that 10 feet behind the house there is a two-foot berm that runs for about 60 to 70 feet between his house and the burn pile.

The state court denied the motion, ruling that the preliminary search was lawful because officers had permission to enter Thompson's property from the landlord, and because the police officers did not enter onto the curtilage of Thompson's trailer home. The court reasoned that the omission of information about Miller's credibility from Agent Peters' affidavit was not material because it was unlikely that Miller would have provided false information in exchange for a deal. And , the court held, the evidence relied on by the issuing judge, including the items found on Thompson's property, established probable cause for the issuance of the warrant.

For reasons unclear from the record, one week after the state court denied Thompson's motion, Thompson was indicted by a federal grand jury and detained pending trial. The federal charges were based on the evidence seized during execution of the state warrant. Thompson again moved to suppress evidence from the search, contending that the warrant was insufficiently supported by probable cause because of the prior warrantless search and the stale information from Miller, and that warrant affidavit itself contained material omissions. Thompson attached to his motion the transcript of the state-court hearing and asked the government to stipulate to the fact that Thompson had already made a preliminary showing for a *Franks* hearing in state court, but asked for a hearing if the government refused. In response, the government contended that the affidavit submitted in support of the warrant established probable cause, disregarded Thompson's argument that the initial search of his yard was illegal, and asserted that Thompson failed to make a sufficient showing in the state court that Agent Peters had omitted material information from the warrant.

The magistrate judge issued a recommendation that the district court deny Thompson's motion because probable cause supported the warrant: "police corroborated any stale information by gathering fresh evidence the day before the warrant was issued, the warrant was not misleading as to the informant, and Thompson had no legitimate expectation in the areas where police observed corroborating evidence." In addition, the magistrate judge rejected Thompson's request for a *Franks* hearing because he failed to show how another hearing would provide additional probative evidence that was not developed in the state court, and noted the inherent reliability of Miller's "shoot-himself-in-the-foot confessions." Finally, the court reasoned, even if the affidavit included everything Thompson said it should, it would still establish probable cause.

Thompson objected to the magistrate judge's findings "on all points" and reasserted his position that the warrant lacked probable cause, that the state officers illegally searched his yard, and that the affidavit was misleading regarding Miller's reliability and motive. Specifically, Thompson argues that, if information about Miller had entered the affidavit, there might have been a different finding on probable cause.

    The district court adopted the magistrate judge's report and recommendation over Thompson's objections.  The court held that Agent Peters' affidavit established probable cause.  Furthermore the court held that police did not act illegally in entering Thompson's yard to obtain corroborating evidence since Thompson failed to establish any subjective expectation of privacy in the areas where the officers looked.  And finally the district court also sided with the magistrate judge in rejecting Thompson's argument that the affidavit would not have supported a finding of probable cause if the omitted information regarding Miller's reliability were included.

    On appeal Thompson challenges the district court's determination that the search warrant was supported by probable cause.  Specifically he contends that the information provided by Miller was insufficient on its own to justify a finding of probable cause because it was stale, and that the officer's attempt to corroborate that information constituted an illegal search of the curtilage of his property.  He also contends that even if the affidavit submitted in support of the warrant establishes probable cause on its face, it contained omissions and false statements that entitle him to a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978).[*]

    Thompson's first contention on appeal is that Miller's information was stale because when Miller gave information to the police on April 24, 2003, he did not specify when he manufactured drugs with Thompson.  Miller had been in Kansas since February, and had only recently returned to Wisconsin because he was upset that Thompson was spending time with his wife.  The brunt of Thompson's argument is that, because Miller's statements were about past events, they fail to establish probable cause standing alone.  This court reviews *de novo* the district court's determination that the supporting affidavit provided probable cause to believe that a search would uncover evidence of a crime, but gives "considerable weight" to the state judge's inference from those facts and his decision to issue the warrant.  *See United States v. Koerth*, 312 F.3d 862, 865, 67 (7th Cir. 2002); *United States v. Fleischli*, 305 F.3d 643, 650 (7th Cir. 2002).  Where probable cause is based on information supplied by an informant, courts consider the following factors: (1) whether the informant has first-hand knowledge of the events he describes, (2) the degree of detail he provides, (3) the time elapsed between the events he describes and the application for the warrant, (4) the extent to which the police have corroborated the informant's information, and (5) whether the informant personally appeared before the judge issuing the warrant.  *Koerth*, 312 F.3d at 866.

---

[*] Thompson does not challenge his sentence under *Blakeley v. Washington,* 124 S. Ct. 2531 (2005) or *United States v. Booker*, 125 S.Ct. 738 (2005) .  According to this court's docket, he requested leave to file additional briefing on ths matter on 8/5/04, and filed a brief on 2/16/05 which he promptly withdrew.  Then on 2/18/05, he filed a motion withdrawing "any claim of reversible error under *Booker* in this appeal."

The district court had a substantial basis for finding that the information in the warrant, reviewed under the totality of the circumstances standard, would lead a reasonably prudent person to believe that a search of Thompson's residence would uncover evidence of methamphetamine manufacture. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). As the government points out, Miller gave first-hand information of ongoing drug manufacture at Thompson's home, and this court has held that when an informant implicates himself in criminal activity his statements are considered particularly reliable. *See United States v. Jones*, 208 F.3d 603, 609 (7th Cir. 2000). In addition, Miller specifically described the location, amount, frequency, and method of the methamphetamine manufacture.

Thompson contends, as in the district court, that the agents' corroborating observations should be suppressed because when they searched the yard they illegally entered the curtilage of Thompson's property. According to Thompson, both the burn pile and the cement pad on which the trailer and bus were parked are within the curtilage because of their fifty-foot proximity to the house. The district court reasoned that, because Thompson erected no fence or boundary to prevent other persons from viewing his yard, he failed to exhibit a subjective expectation of privacy in the areas where police officers viewed the inculpatory objects. This court reviews the district court's findings of fact in a suppression hearing for clear error, and conclusions of law and mixed questions of law and fact *de novo. See United States v. French*, 291 F.3d 945, 950-51 (7th Cir. 2002).

In order to establish that the yard is part of the home's curtilage, Thompson was required to show that it is "so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *United States v. Dunn*, 480 U.S. 294, 301 (1987); *Siebert v. Severino*, 256 F.3d 648, 653-54 (7th Cir. 2001). Whether he has a reasonable expectation of privacy in the yard as part of the home's curtilage depends on "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation from people passing by." *Dunn*, 480 U.S. at 301. The fact that an object is within a certain distance from the house, standing alone, "supports no inference that [it] should be treated as an adjunct of the house." *Id.* at 302.

Thompson fails to point to any evidence that he had a legitimate expectation of privacy in the burn pile or in the bus and trailer. Thompson does not contest that the only discernible barrier on his property, a two-foot berm running 10 feet behind his trailer, actually separates the burn pile from his house, or that the burn pile can be observed from a vantage point other than his yard. (R. 19 at 29, 56.) He presented no evidence that the burn pile is intimately connected with the home's activities and the very fact that it is a burn pile seems to equate its contents to garbage, in which there is no privacy interest. *United States v. Tolar*, 268 F.3d 530, 532 (7th Cir. 2001). Thompson's curtilage argument might succeed if he could show that he shielded the contents of the bus and trailer from public view, but he

has presented no evidence to that effect. Peters and Sullivan were able to peer into the bus and trailer from the driveway, an area that is deemed public for Fourth Amendment purposes unless some effort is made to enclose it. *See French*, 291 F.3d at 953. For all these reasons it seems that Thompson's claim that his curtilage was violated, requiring suppression, fails, and the search adequately corroborates Miller's statements.

Thompson also contends on appeal that he was entitled to a *Franks* hearing in the district court. A defendant is entitled to a *Franks* hearing if he makes a preliminary showing that an affiant knowingly, or with reckless disregard for the truth, made a false statement that was necessary for the determination of probable cause. *Franks,* 438 U.S. at 155-56; *Molina v. Cooper,* 325 F.3d 963, 968 (7th Cir. 2003); *United States v. Maro,* 272 F.3d 817, 821 (7th Cir. 2001). This rule applies equally to omissions that could reasonably affect the issuing judge's determination of probable cause. *See, e.g., United States v. Swanson*, 210 F.3d 788, 790-91 (7th Cir. 2000). The preliminary showing must be motivated by "more than a mere desire to cross examine":

> There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

*Franks,* 438 U.S. at 171.

Thompson claims that Agent Peters omitted certain facts from his affidavit because they "tend to cast doubt on Miller's version of the events." He claims that the following facts about Miller should have been included: (1) he was under arrest for a domestic disturbance, (2) he wanted the police to drop the charges against his wife, (3) he had used methamphetamine in the last twenty-four hours, (4) he was promised a deal in exchange for information about methamphetamine in Monroe County, (5) he was angry at Thompson for "spending time" with his wife while he was out of the state, and (6) he has an extensive criminal history and served at least one prison term. Thompson also claims that Peters omitted information about the items found in the search of the yard that would have made it apparent to the judge that they were not used for criminal activity. He says Thompson failed to mention that: (1) he observed only aerosol tops, not complete aerosol cans in the burn pile, and therefore they could have come from any type of aerosol can, (2) the squirt guns he mentioned were still in their original packaging, and therefore it was impossible to say for what use they were intended, and 3) Peters neglected to mention how he observed the rectangular aluminum containers. This court reviews for clear error the district court's *Franks* determination. *See Maro,* 272 F.3d at 821.

The district court did not err in denying Thompson a *Franks* hearing because Thompson had a *Franks* hearing in the state court and does not point out what new information he might offer as proof of his allegations in a new hearing. The evidence he presented in the district court is insufficient to show how Peters' omissions were intentional or reckless, not least because Peters did not even testify. (Thompson failed to subpoena him, and the state judge figured the testimony would be duplicative. Thompson does not contend that he would have called Peters if given a chance in federal court, nor does he say that he would have offered *any* evidence that wasn't already presented to the state court.) Thompson's mere assertion on appeal that Peters' omissions "seem to have been made intentionally, in an attempt to increase their inferential value" is not enough. *Maro,* 272 F.3d at 821; *Swanson,* 210 F.3d at 791.

Even if a conclusory allegation were enough to establish the intent required for a preliminary showing for a *Franks* hearing, the alleged omissions must also be material, and they were not. Thompson contends that Peters saw only the tops of aerosol cans, and that they could have come from any type of can "from Aquanet hairspray to Cheez Whiz, present in nearly every household," or at even "the most banal of church picnics." However, Sullivan testified he saw "some" cans in the burn pile. Given that there were some cans present, Peters may well have been able to identify them as "consistent with the size and shape of cans of starting fluid." Thompson also claims that Peters omitted from the affidavit the fact that the squirt guns were in their original packaging, but this fact does not detract much from the likelihood that they could be used in the manufacture of methamphetamine. Similarly, Peters' failure to mention in the warrant affidavit "how and where" he observed the large propane tanks fails to significantly detract from his informed conclusion that they likely were used in methamphetamine manufacture.

The only *Franks* showing that Thompson raised both in the district court and on appeal is his contention that Peters omitted information about Miller's motive and credibility from the affidavit. But this contention fails since omissions about an informant's reliability are less significant where, as here, the informant's statements are ultimately corroborated. *See United States v. Washburn*, 383 F.3d 638 (7th Cir. 2004). Not only was the information from Miller corroborated, it was an explicit and detailed description of wrongdoing that implicated Miller himself, and this also weighs heavily in favor of a finding of probable cause. *Id.* at 971-72; *United States v. Johnson*, 289 F.3d 1034, 1039 (7th Cir. 2002). It is true that if Peters had a "serious doubt" about Miller's information he would have been obliged to report it to the judge, but Thompson presents no evidence of this. *See Molina*, 392 F.3d 970. In any case, the fact that Miller was facing charges and hoping for a deal would not surprise the judge or be likely to upset his probable cause finding since informants are often "facing charges and hoping for deals." *Molina,* 325 F.3d at 970. In any case, even if all the information about Miller were included in the affidavit, the affidavit would still support a finding of probable cause, and therefore the district court was correct to deny the *Franks* hearing.

Taken together, the facts in the warrant affidavit were sufficient to establish probable cause and support issuance of the warrant. The information omitted from the warrant affidavit could not have reasonably effected the issuing judge's determination of probable cause. Thus the district court was not precluded from holding that the information omitted from the affidavit did not entitle Thompson to a *Franks* hearing. The district court's opinion is affirmed.