# In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-1238

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

DANIEL SANDOVAL-VASQUEZ,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 CR 347-5—**James F. Holderman**, *Judge.*

———————

ARGUED OCTOBER 26, 2005—DECIDED JANUARY 26, 2006

———————

Before FLAUM, *Chief Judge*, and EVANS and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* After the district court denied his motion to suppress evidence police officers obtained after entering his business, Daniel Sandoval-Vasquez entered a conditional guilty plea to possessing, with the intent to distribute, over five kilograms of cocaine. He now appeals the denial of his motion to suppress and raises challenges to his sentence. We agree with the district court that the officers' entry into his open business did not violate the Fourth Amendment, and we do not find the district

court's finding that Sandoval-Vasquez consented to the officers' subsequent search of a van located on his premises clearly erroneous. Therefore, we uphold the denial of his motion to suppress. We also decline to reverse the district court's determination that Sandoval-Vasquez should not receive a minor role adjustment to his sentence. In light of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), however, we order a limited remand of his sentence pursuant to the procedure we set forth in *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005).

## I. BACKGROUND

On the afternoon of April 10, 2002, law enforcement personnel conducting a narcotics investigation observed Miguel Morales deliver six kilograms of cocaine. Chicago Police Department officers detained Morales, and Morales told the officers he obtained the cocaine from a van parked inside an iron works business located at 4337 South Kildare Avenue in Chicago. Morales described the van as a blue panel van with faded white writing. Morales also stated that the van contained numerous bricks of cocaine hidden in a trap compartment. He did not state whether any weapons were present at the location.

Armed with this information, Officer Steven DeSalvo drove to 4337 South Kildare, finding a business there named Custom Fit Iron Works. He saw that the business had a large, open garage door and that a blue van matching the description given by Morales was inside the garage. While on surveillance for about an hour, he noticed that about ten people appeared to be working inside the business, and he also saw people periodically enter and leave the business. Around 4:30 p.m., Officer DeSalvo thought that the business would probably soon be closing for the day, so seven or eight Chicago Police Department officers then entered the business through the open garage door

and a pedestrian entrance. At least two or three officers entered with their weapons drawn, yelling "Chicago police." The officers then handcuffed the nine persons inside. Daniel Sandoval-Vasquez, the defendant, identified himself as the owner of the business. Officer DeSalvo later testified that he asked Sandoval-Vasquez whether there were any weapons on the premises, and Sandoval-Vasquez told him there was a handgun in his office. Officers recovered a gun from the office.

Chicago Police Department Sergeant John McHugh then arrived and took Sandoval-Vasquez outside. Sergeant McHugh questioned Sandoval-Vasquez, but he did not first advise him of his *Miranda* rights. Sandoval-Vasquez told Sergeant McHugh that he was an informant for the Chicago Police Department and was working on a marijuana deal with an undercover officer. Sergeant McHugh responded that the police were conducting a different investigation, one concerning the van. Sandoval-Vasquez replied that the persons who had brought the van to his business had been removing cocaine out of a trap inside the van.

FBI agents arrived on the premises at approximately 5:20 p.m. FBI Special Agent Jay Emigh presented Sandoval-Vasquez with consent to search and advice of rights forms in Spanish. Another officer read the forms to Sandoval-Vasquez in Spanish, and, after acknowledging he understood his rights, Sandoval-Vasquez signed the forms. He told Agent Emigh he was paid $10,000 to store the van, which had initially contained 42 kilograms of cocaine, at his business. While Agent Emigh and the defendant were speaking, an officer interrupted the two to explain that the officers were having difficulty opening the trap compartment inside the van. After Agent Emigh asked Sandoval-Vasquez if he knew how to open the trap, Sandoval-Vasquez explained how he believed the trap worked. He then tried to help the officers open the trap compartment. The officers eventually opened the trap and recovered 24 kilograms of cocaine located inside.

Sandoval-Vasquez later filed a motion to suppress statements he made to law enforcement officials and the cocaine and handgun recovered at his business. The district court suppressed statements made to Sergeant McHugh because Sandoval-Vasquez did not first receive *Miranda* warnings. However, the district court ruled that Sandoval-Vasquez voluntarily waived his rights and consented to the search when he spoke with Agent Emigh. The district court also concluded that the officers had probable cause to believe that the van contained cocaine and that the officers did not begin to search the van until after Sandoval-Vasquez gave his consent. The district court held that the gun and cocaine recovered at Custom Fit Iron Works, in addition to Sandoval-Vasquez's statements to Agent Emigh, were admissible. Sandoval-Vasquez then entered a conditional guilty plea to possessing, with the intent to distribute, over five kilograms of cocaine, in violation of 18 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. He now appeals.

## II.  ANALYSIS

### A.  Motion to Suppress

When we review a district court's denial of a motion to suppress, we review the district court's findings of fact for clear error. *United States v. Hagenow*, 423 F.3d 638, 642 (7th Cir. 2005). We review its determination of the reasonableness of a search de novo. *United States v. Husband*, 226 F.3d 626, 629 (7th Cir. 2000).

#### 1.  Entry into Sandoval-Vasquez's Business

Sandoval-Vasquez first contends the officers' warrantless entry into his business violated the Fourth Amendment. As a result, he maintains, the district court should have granted his motion to suppress evidence seized after the officers entered the business as the fruit of an unlawful entry. *See Wong Sun v. United States*, 371 U.S. 471, 484-87

(1963); *United States v. Robeles-Ortega*, 348 F.3d 679, 681 (7th Cir. 2003).

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." In addition to protecting private homes, the Fourth Amendment also affords protection to businesses and commercial facilities. *Dow Chemical Co. v. United States*, 476 U.S. 227, 235 (1986); *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 312 (1978). In either case, "[t]he touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.'" *California v. Ciraolo,* 476 U.S. 207, 211 (1986) (quoting *Katz v. United States,* 389 U.S. 347, 360 (1967) (Harlan, J., concurring)). "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz*, 389 U.S. at 351.

Here, the government maintains that the officers' entry into the business did not violate the Fourth Amendment, and we agree. As we have said before, "[a]n open gate invites entry." *United States v. Tolar*, 268 F.3d 530, 532 (7th Cir. 2005). In *Tolar*, we held there was no violation of the Fourth Amendment when police officers entered an open business to ask the owner's permission to conduct a search. *Id.* We noted that a chain link fence surrounding the property did not engender a reasonable expectation of privacy in items visible from beyond the fence. *Id.* As in *Tolar*, the officers in this case entered an open business to seek the owner's permission to conduct a search, and nothing about the property asserted an expectation of privacy. During the hour before the officers' entry, an officer had observed persons entering and leaving the building. Significantly, at the time of entry, the door through which customers entered was open, the garage door was open, and the establishment was still open for business.

That Sandoval-Vasquez's business may have been in the process of closing does not help him, as the fact remains that the business was still open when the officers entered. Our decision in *United States v. Swart*, 679 F.2d 698 (7th Cir. 1982), therefore, does not assist Sandoval-Vasquez. There, we ruled that officers' entry into a business they knew was closed violated the Fourth Amendment. In this case, however, the officers entered an open business.

Sandoval-Vasquez also attempts to distinguish *Tolar* on the basis that the officers here entered the premises with their weapons drawn, yelling that they were police officers and ordering the occupants against a wall. The officers' entry in *Tolar*, in contrast, was peaceful. Sandoval-Vasquez thus maintains that in addition to entering the business shortly before it closed, the officers' manner of entry into his business rendered the entry unlawful. *See Wilson v. Arkansas*, 514 U.S. 927, 934 (1995) (holding that knock-and-announce principle is an element of the Fourth Amendment reasonableness inquiry because "we have little doubt that the Framers of the Fourth Amendment thought that the method of an officer's entry into a dwelling was among the factors to be considered in assessing the reasonableness of a search and seizure").

We agree with the district court that the officers' manner of entry was not unreasonable. Before they entered, the officers knew that a van parked inside the premises contained a significant quantity of cocaine, which Sandoval-Vasquez's counsel acknowledged likely had a street value of at least several hundred thousand dollars. Even though the officers had not received information that anyone on the premises possessed a weapon, we do not think it was unreasonable for the officers to protect themselves and the persons inside by entering with a show of force. *See United States v. Morton*, 17 F.3d 911, 912-13 (6th Cir. 1994). Entering by announcing their status as police officers and with weapons drawn was a reasonable precaution to take in

light of the large quantity of drugs at stake and no guarantee as to how the occupants might react.

### 2. *Voluntariness of Consent*

Sandoval-Vasquez also argues that the district court erred when it found he voluntarily consented to the search of the van. The Fourth Amendment's prohibition against warrantless searches does not apply when law enforcement officials receive voluntary consent to search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *United States v. Grap*, 403 F.3d 439, 442 (7th Cir. 2005). The government bears the burden of proving by a preponderance of the evidence that consent was freely and voluntarily given. *Grap*, 403 F.3d at 442. Whether consent is voluntary is a question of fact dependent upon the totality of the circumstances. *Schneckloth*, 412 U.S. at 227; *Grap*, 403 F.3d at 442. In light of the fact-specific nature of this inquiry, we review a district court's finding that a defendant voluntarily consented for clear error. *United States v. Santiago*, 428 F.3d 699, 704 (7th Cir. 2005). Factors we consider in determining whether consent was voluntary include: (1) the person's age, intelligence, and education; (2) whether he was advised of his constitutional rights; (3) how long he was detained before he gave his consent; (4) whether his consent was immediate, or was prompted by repeated requests by the authorities; (5) whether any physical coercion was used; and (6) whether the individual was in police custody when he gave his consent. *Id.* at 704-05.

The district court found that Sandoval-Vasquez knowingly and voluntarily consented to the search after Agent Emigh's arrival, and we decline to deem this finding was clearly erroneous. Although the officers entered the business with a show of force and placed other employees in handcuffs almost immediately, the totality of the circumstances supports the district court's finding that Sandoval-Vasquez knowingly and voluntarily consented. Sandoval-

Vasquez initially declined to consent to a search, indicating he knew of his right to refuse. After Agent Emigh arrived, approximately forty minutes after the officers' initial entry, officers informed Sandoval-Vasquez of his constitutional rights in Spanish, his primary language. He then received, read, and signed a consent to search form written in Spanish. At the time, Sandoval-Vasquez was fifty-seven years old and was acting as a police informant, further suggesting to the district court that he understood the nature of his consent.

In addition, the district court's conclusion that Sergeant McHugh did not threaten Sandoval-Vasquez to obtain his consent was not clearly erroneous. We will only reverse a district court's credibility determination upon a finding of clear error, as the district court has the opportunity to observe testimony and to evaluate a witness's demeanor. *United States v. Williams*, 209 F.3d 940, 943 (7th Cir. 2000). Here, Sandoval-Vasquez testified at the suppression hearing that Sergeant McHugh threatened that his family would be taken away if he did not sign the consent form; Sergeant McHugh testified that he never made such a threat. In addition, Sandoval-Vasquez did not include the alleged threat in an affidavit submitted to the court and did not seek to add the alleged threat when afforded the opportunity to change his affidavit. After considering both parties' testimony, the district court found that Sandoval-Vasquez lied about being threatened. This finding is supported by the evidence, and we accord it deference.

As further support for a finding that the consent was voluntary, the district court pointed to Sandoval-Vasquez's additional cooperation with law enforcement beyond merely signing the consent form. When officers reported having trouble opening the trap compartment, Sandoval-Vasquez described to them in more detail the method he had observed others use to open the trap. He even attempted to help the officers open the compartment. Sandoval-Vasquez

continued to cooperate with Agent Emigh, later directing him to another location where he knew that cocaine had been received in the past. On balance, then, the district court's conclusion that Sandoval-Vasquez voluntarily consented to the search was not clearly erroneous.

Finally, we note that Sandoval-Vasquez argued that any consent he gave after Agent Emigh's arrival was insufficient to "purge the taint" of what he contends was an illegal entry into his business. *See Brown v. Illinois*, 422 U.S. 590, 603-05 (U.S. 1975); *United States v. Cellitti*, 387 F.3d 618, 623 (7th Cir. 2004). That principle is inapplicable, however, as we have already concluded that the officers' initial entry was lawful. *See United States v. Marshall*, 157 F.3d 477, 484 (7th Cir. 1998).

## B. Minor Participant Adjustment

Sandoval-Vasquez also contends the district court erred when it declined to grant him a downward adjustment for playing a minor role in the offense. The United States Sentencing Guidelines provide for a two-level decrease in offense level when a defendant was a "minor participant" in criminal activity. U.S.S.G. § 3B1.2(b) (2002). The commentary to this provision defines a "minor participant" as a defendant "who plays a part in committing the offense that makes him substantially less culpable than the average participant" and "who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2 cmt. nn. 3(A) & 5. The defendant has the burden of showing he is entitled to the adjustment by a preponderance of the evidence, and we review a district court's denial of a minor participant adjustment for clear error. *United States v. Rodriguez-Cardenas*, 362 F.3d 958, 960 (7th Cir. 2004).

Sandoval-Vasquez argues he was less culpable than other participants because he received a flat fee for storing the

cocaine and thus had no stake in the success of the cocaine's sales. He also maintains the other participants in the drug-selling scheme could have requested the van's return at any time. The Presentence Investigation Report prepared by the United States Probation Office recommended that Sandoval-Vasquez receive the minor role adjustment he seeks. Nonetheless, the district court chose not to impose it. Although we recognize the appeal of Sandoval-Vasquez's position, we cannot say that the district court's decision not to award the adjustment was clearly erroneous.

Sandoval-Vasquez provided the facility that held the cocaine for sale and the location for the loading and off-loading of a significant quantity of drugs. He also knowingly allowed other participants in the drugs sales operation access to the cocaine. Moreover, he received $10,000 for his participation, an amount the district court found signifi-cant. The district court's conclusion that Sandoval-Vasquez was at least equally culpable as his co-defendant in the crime of possession with intent to distribute was not clearly erroneous. *See United States v. McKee*, 389 F.3d 697, 700 (7th Cir. 2004) (upholding minor role participant where defendant was "essential component" to the crime).

## C.  *Booker* Challenge

Finally, Sandoval-Vasquez contends we should remand his sentence for reconsideration. Acting before the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the district treated the Sentencing Guidelines as mandatory when it sentenced Sandoval-Vasquez to 235 months' imprisonment. Because Sandoval-Vasquez did not raise a Sixth Amendment or related objection to his sen-tence before the district court, we review his challenge for plain error. *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005). The government agrees that on this record, we

cannot be certain that the district court would have imposed the same sentence with the discretion permitted by *Booker*. The district court recognized that Sandoval-Vasquez was fifty-seven years old at the time of sentencing, and both the government and district court commented on the severity of the then-mandatory guideline range. The district court granted a downward adjustment and then imposed a sentence at the lowest end of the resulting guidelines range. Accordingly, in accordance with the procedure we set forth in *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005), we order a limited remand to ask the sentencing judge whether, if required to resentence, he would impose his original sentence.

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM Sandoval-Vasquez's conviction and order a LIMITED REMAND of his sentence in accordance with the procedure we set forth in *United States v. Paladino.*

A true Copy:

    Teste:

                  _____

                  *Clerk of the United States Court of*
                  *Appeals for the Seventh Circuit*