NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued December 12, 2007
Decided January 11, 2008

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

No. 07-2028

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 06 CR 30155 |
| ANICETO C. GALLARDO, *Defendant-Appellant.* | G. Patrick Murphy, *Judge.* |

**O R D E** R

Ancieto C. Gallardo pleaded guilty to possessing cocaine with intent to distribute.  *See* 21 U.S.C. § 841(a)(1).  He was sentenced at the low end of the Guidelines range to 168 months' imprisonment.  Gallardo contends that it was error for the district court to impose a two-level upward adjustment to his base offense level for use of a special skill—his commercial driver's license.  *See* U.S.S.G. § 3B1.1.  We agree and vacate Gallardo's sentence and remand for resentencing.

Gallardo is a licensed commercial truck driver.  In October 2006 an Illinois State Police Trooper pulled him over for speeding.  The trooper found several things about the semi-tractor trailer that Gallardo was driving to be suspicious:  its decals were not up to industry standards; it was an old model that was nonetheless freshly painted; it

was pulling an empty vehicle hauler; and it displayed a "Support the Florida Troopers" sticker, which the trooper knew from experience were often used to dissuade law enforcement officers from stopping a vehicle. The trooper therefore asked Gallardo where he was going. Gallardo said he was headed to a car lot in Chicago to pick up cars that needed transporting, but he was unable to produce any documentation about the alleged pick up or provide the name or location of the car lot. The trooper then asked for, and received, Gallardo's permission to search the truck. The trooper found 91 bundles, containing what was later determined to be 50 kilograms of cocaine, under the truck's sleeper bunk.

After Gallardo pleaded guilty to possessing the cocaine, a probation officer prepared a presentence report. Gallardo objected to the probation officer's recommendation that his use of a commercial driver's license merited a two-level upward adjustment to his base offense level under U.S.S.G. § 3B1.1, which provides for such an adjustment when, among other things, the defendant used a "special skill" in a manner that "significantly facilitated the commission or concealment of the offense." Gallardo acknowledged that we have on multiple occasions held that long-haul truck driving is a "special skill" for purposes of § 3B1.1. Gallardo argued, however, that there was "no connection" between his commercial driver's license and the offense here because, in his view, 50 kilograms of cocaine could just as easily have been transported in the trunk of an ordinary car. The government conceded that 50 kilograms of cocaine could fit in the trunk of a sedan, but argued that use of a commercial truck made concealment of the cocaine easier, which according to the government's reading of our decision in *United States v. Tolar,* 268 F.3d 530 (7th Cir. 2001), was sufficient to merit the adjustment. The district court agreed; it applied the adjustment because it found that Gallardo, at least in theory, moved the cocaine "more secretively" in the truck than he could have in a car. After hearing argument on the sentencing factors in 18 U.S.C. § 3553(a), the court sentenced Gallardo at the low end of the Guidelines range.

Gallardo argues on appeal that it was error for the district court to impose the two-level upward adjustment for using a special skill. *See* U.S.S.G. § 3B1.1. As he did below, Gallardo accepts our earlier determination that commercial truck driving is a "special skill" for purposes of this Guideline, *see United States v. Smith,* 332 F.3d 455, 458-50 (7th Cir. 2003); *United States v. Lewis,* 41 F.3d 1209, 1214 (7th Cir. 1994), but argues that the district court erred in finding that he used his commercial driver's license in a significant way to facilitate the concealment of his possession of the cocaine. Such a finding, which we accept unless clearly erroneous, *Smith,* 332 F.3d at 458, was required for the adjustment to apply, *see* U.S.S.G. § 3B1.1; *United States v. Tolar,* 268 F.3d 530, 532-33 (7th Cir. 2001).

We agree with Gallardo that his commercial driver's license did not lend significantly to the concealment of his offense. In arguing to the contrary, the

government relies solely on our decision in *Tolar,* but this case is distinguishable. In *Tolar,* we said that the defendant, who created a phony trucking business as a front to, over time, transport nearly 400 kilograms of cocaine and 2,000 kilograms of marijuana before he was caught, merited the two-level adjustment because that trucking business significantly facilitated the commission and concealment of the drug offenses. *See Tolar,* 268 F.3d at 533-34. Gallardo, by contrast, did nothing more with his commercial driver's license than once drive with 50 kilograms of cocaine in his truck's sleeper bunk. Perhaps it was easier to hide that amount of cocaine in that bunk than in the trunk of an ordinary sedan, but the government concedes that Gallardo could have done so. In order for the Guideline for use of a special skill to apply, that use must do more than merely aid in the concealment of the offense; it must *significantly facilitate* the concealment of the offense. *See* U.S.S.G. § 3B1.1. To apply the Guideline to Gallardo would read this language out of the Guideline, and that we will not do.

Accordingly, Gallardo's sentence is VACATED and the case is REMANDED for further proceedings.