**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 5, 2009

Charles R. Fulbruge III
Clerk

No. 08-10752

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

JOSE GUILLERMO ORDONEZ

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:08-cr-00042-A

Before KING, GARWOOD, and DAVIS, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Jose Guillermo Ordonez pleaded guilty pursuant to a written plea agreement to a single-count indictment charging him with possession with the intent to distribute a controlled substance. The plea agreement did not contain a waiver of appellate rights. The district court sentenced Ordonez to 212 months of imprisonment, to be run consecutively to any sentence imposed in pending state court proceedings. Ordonez appeals.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTS

Ordonez stipulated to the following underlying facts: Ordonez was driving a tractor trailer through Texas in January 2008. A Texas Department of Public Safety trooper stopped Ordonez's tractor trailer. The trooper became suspicious that Ordonez might be involved in illegal activities, so he asked for consent to search the trailer. Ordonez consented to the search. The trooper discovered three bags containing bricks of cocaine. The trooper placed Ordonez under arrest. Ordonez admitted that he knew the cocaine was in his vehicle and that he was to be paid $8,000 to transport the cocaine. Analysis revealed that there were 25.27 kilograms (approximately 55.7 pounds) of cocaine.

The presentence report (PSR) included the following additional details: Ordonez's tractor trailer was loaded with boxes of Hallmark greeting cards. The trooper discovered the drugs after tracking marks in the dust on top of the boxes where something had been dragged over the boxes of greeting cards. Prior to his arrest, Ordonez informed the trooper that he did not load anything into the trailer and that he was only the driver. He also told the trooper that he feared for his ex-wife's safety because he was talking to the police.

Ordonez spoke to an agent from the Drug Enforcement Agency following his arrest. Ordonez told the agent about "his prior drug trafficking activities, information regarding a cocaine smuggling organization operating out of El Paso, Texas, as well as his involvement with other individuals participating in drug trafficking." Based on the information Ordonez provided, the probation officer estimated that Ordonez was responsible for 126.35 kilograms of cocaine.

The PSR calculated Ordonez's base offense level at 36, based on the probation officer's estimate of the amount of drugs involved. Ordonez received a two-level enhancement pursuant to U.S.S.G. § 3B1.3 because he used his special skill as a commercial truck driver to facilitate the offense. Following a three-level reduction for acceptance of responsibility, Ordonez's total offense

level was 35. His criminal history category was II. The resulting Guidelines range of imprisonment was 188 to 235 months.

Ordonez filed objections to the PSR arguing, inter alia, that the drug activities he admitted to following his arrest should not be used against him even though such a use is permissible under the Guidelines. He also objected to the two-level adjustment on the grounds that possession of a commercial driver's license (CDL) is not a special skill and that, even assuming possession of a CDL is a special skill, the facts did not support the conclusion that the use of such skill significantly facilitated the commission of the instant offense. Ordonez also objected to the fact that the PSR did not recommend a reduction in his offense level based on his mitigating role in the overall offense. Ordonez re-urged his objections in response to the Addendum to the PSR. Prior to sentencing, Ordonez moved for a downward variance from the advisory Guidelines range and requested a sentence of 120 months of imprisonment.

The district court overruled Ordonez's objections at sentencing. The district court also denied Ordonez's motion for a downward variance. The district court sentenced Ordonez to 212 months of imprisonment, to run consecutively to any sentence imposed in Ordonez's pending state court proceedings. The district court also ordered Ordonez to serve three years of supervised release. Ordonez objected to the district court's order requiring his federal sentence to run consecutively to his yet-to-be imposed state sentence. The district court also overruled that objection. Ordonez filed a timely notice of appeal.

## II. STANDARD OF REVIEW

Generally, this court reviews criminal sentences for reasonableness. *Gall v. United States*, — U.S. —, 128 S. Ct. 586, 594 (2007). Using a bifurcated approach, this court first determines whether the district court committed any

procedural errors, "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the 18 U.S.C. § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Id.* at 597. In making that determination, "[w]e review the district court's interpretation and application of the Sentencing Guidelines *de novo* and its factual findings for clear error." *United States v. Gonzalez*, 445 F.3d 815, 817 (5th Cir. 2006).

If the district court's decision is procedurally sound, this court will "consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard . . . tak[ing] into account the totality of the circumstances. . . ." *Gall*, 128 S. Ct. at 597. A post-*Booker* discretionary sentence imposed within a properly calculated Guidelines range is entitled to a rebuttable presumption of reasonableness. *United States v. Alonzo*, 435 F.3d 551, 554 (5th Cir. 2006); *see also Rita v. United States*, 551 U.S. 338, 347 (2007) (holding that appellate courts may apply a presumption of reasonableness to sentences imposed within a defendant's advisory Guidelines range).

## III. ANALYSIS

Ordonez argues that the district court committed procedural error with respect to: (1) calculation of the quantity of drugs involved; (2) finding that his use of a CDL merited a two-level "special skill" enhancement under U.S.S.G. § 3B1.3; (3) denying a reduction under U.S.S.G. § 3B1.2 based on his mitigating role in the offense; and (4) ordering the sentence to run consecutively to a not-yet-imposed state court sentence. In addition to the asserted procedural errors, Ordonez argues that the sentence is substantively unreasonable.

## A. *Procedure: Calculation of Drug Quantity*

Ordonez argues that the district court erroneously overruled his objection to the amount of drugs for which he was being held responsible. He argues that he admitted these drug amounts "in a spirit of full cooperation" before counsel could obtain an agreement from the Government not to use such statements against him. Ordonez concedes that there was no formal agreement under U.S.S.G. § 1B1.8(a) that would prevent the use of such information. He argues, however, that the use of the information unfairly increases his sentence and violates the sentencing goals of § 3553(a).

This court reviews a district court's application of the Guidelines *de novo*. *Gonzalez*, 445 F. 3d at 817. Accordingly, Ordonez's arguments regarding the use of his debriefing information are subject to *de novo* review.

> Where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement.

U.S.S.G. § 1B1.8(a)

The Guidelines explicitly require a court to enforce an agreement by the Government that it will not use self-incriminating information against the defendant in calculation of a sentence. *Id.* Ordonez concedes that there was no such agreement in this case. Accordingly, the district court's use of the debriefing information was not contrary to the Guidelines.

To the extent Ordonez argues that the district court committed procedural error by failing to take his cooperation into account when considering the sentencing factors of § 3553(a), his argument is without merit. A district court is required to consider the § 3553(a) factors when determining an appropriate

sentence. *Gall*, 128 S. Ct. at 597. These factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence to reflect the seriousness of the offense, the need to promote respect for the law and provide just punishment, the need to afford adequate deterrence to criminal conduct, and the need to protect the public from further crimes. § 3553(a). At sentencing, the district court stated that it would take the extent of Ordonez's cooperation with authorities during his debriefing into account when determining what sentence to impose. The record does not support Ordonez's argument that the district court's consideration of the debriefing information resulted in an unfair sentence. *See Gall*, 128 S. Ct. at 597.

### *B. Procedure: Special Skill Enhancement*

Ordonez argues that the district court erred in determining that he used a special skill, namely the possession of a CDL, to significantly facilitate the commission of the offense. Ordonez argues that his possession of a CDL does not constitute a "special skill" and that it did not significantly facilitate the commission of the offense as required by the Guideline. In support of his argument, he relies on *United States v. Gallardo*, 266 F. App'x 468 (7th Cir. 2008) (unpublished).

The Guidelines permit a two-level enhancement "[i]f the defendant . . . used a special skill[] in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. A "special skill" is one "not possessed by members of the general public and usually requiring substantial education, training or licensing." § 3B1.3 cmt. n.4. "Because 'the application of § 3B1.3 is a sophisticated factual determination,' we review a § 3B1.3 sentencing enhancement under a clearly erroneous standard." *United States v. Deville*, 278

F.3d 500, 508 (5th Cir. 2002) (quoting *United States v. Fisher*, 7 F.3d 69, 70 (5th Cir. 1993)).

We have never directly addressed the issue of whether a CDL may constitute a "special skill," but other courts have determined that a special skill enhancement based on the ability to drive a tractor trailer truck may be appropriate. *See United States v. Mendoza*, 78 F.3d 460, 465 (9th Cir. 1996) (determining that " the driving of an 18-wheeler without any reported mishap over several years is a skill well beyond that possessed by the general public" and is sufficient to constitute a "special skill"); *United States v. Lewis*, 41 F.3d 1209, 1214 (7th Cir. 1994) ("Truck driving requires technical knowledge or ability that the average citizen does not possess."). We agree that possession of a CDL is a special skill.

That does not end our inquiry. Though possession of a CDL is a "special skill," it triggers the sentencing enhancement under § 3B1.3 only if it "significantly facilitated" the underlying offense. Ordonez cites *Gallardo* for the proposition that possession of a CDL does not significantly facilitate the concealment or transport of a relatively small amount of drugs. 266 F. App'x at 468. There, the defendant hid 50 kilograms of cocaine in his truck's sleeper bunk, which the court analogized to hiding the drugs "in the trunk of an ordinary sedan." *Id.* at 469. The Seventh Circuit concluded that possessing the CDL did not significantly facilitate hiding the drugs and that the district court clearly erred in applying the enhancement. *Id.* at 469–70.

*Gallardo* is distinguishable because the drugs in Ordonez's truck were not hidden in the cab, which would be analogous to transporting drugs in an ordinary vehicle. Secreting the drugs in a large trailer loaded with legitimate cargo obviously makes the drugs much more difficult for the police to discover. In these circumstances, we agree with the district court's finding that Ordonez's

"special skill," possession of a CDL, "significantly facilitated" the commission of the underlying offense.

## C. Procedure: Minor Role Reduction

Ordonez argues that the district court erred by denying him a reduction in his offense level for his minor role in the offense. He argues that his status as a mere drug courier, along with the fact that he was not involved in and did not know anything about the distribution of the drugs, warrants a reduction under U.S.S.G. § 3B1.2.

A district court may decrease a defendant's offense level by two levels if it finds that the defendant was a minor participant in the offense. U.S.S.G. § 3B1.2(b). An adjustment for a minor role applies to a defendant "who is less culpable than most other participants, but whose role could not be described as minimal." § 3B1.2 cmt. n.5. Whether a defendant is a minor participant in a drug offense is a factual determination reviewed for clear error. *United States v. Villanueva*, 408 F.3d 193, 203 (5th Cir. 2005). "A factual finding is not clearly erroneous if it is plausible in light of the record read as a whole." *Id.*

Ordonez's argument that the district court clearly erred by denying his request for a minor role adjustment lacks merit. To the extent he argues that he was entitled to the reduction because he was a mere drug courier, his argument is unavailing under this court's case law. *See United States v. Edwards*, 65 F.3d 430, 434 (5th Cir. 1995); *United States v. Pofahl*, 990 F.2d 1456, 1485 (5th Cir. 1993). To the extent Ordonez argues that he should have received the disputed adjustment because he was less culpable than others involved in the offense, his argument is unavailing. Ordonez knew that he was carrying drugs and he expected to be paid a substantial sum of money for his activities. Ordonez also admitted making at least three similar prior drug trafficking trips. Furthermore, Ordonez's commission of the instant offense was

"indispensable" and essential to the planned distribution of the drugs. *See United States v. Buenrostro*, 868 F.2d 135, 138 (5th Cir. 1989). Accordingly, the district court did not err by denying Ordonez a minor role reduction.

### D. Procedure: Consecutive Sentences

Ordonez argues that the district court lacked the statutory authority to order his federal sentence to run consecutively to his yet-to-be imposed state court sentence. In support of his argument, Ordonez relies on *United States v. Quintana-Gomez,* 521 F.3d 495, 496 (5th Cir. 2008).

This court reviews a sentence, including its consecutive nature, for reasonableness. *United States v. Candia*, 454 F.3d 468, 472-73 (5th Cir. 2006). A district court's authority to order a consecutive sentence is governed by 18 U.S.C. § 3584(a), which provides that "if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively." This court has held that a district court's authority to impose a consecutive sentence under § 3584(a) includes the authority to order that a federal sentence run consecutively to a not-yet-imposed state sentence. *See United States v. Brown*, 920 F.2d 1212, 1216-17 (5th Cir. 1991), *abrogated on other grounds by Candia*, 454 F.3d at 473. The rule announced in *Brown* is the law of this Circuit, which forecloses ruling on this issue.

### E. Substantive Reasonableness

Having concluded that Ordonez's sentence was free from procedural error, we turn to the issue of substantive reasonableness, applying the abuse-of-discretion standard. *See Gall*, 128 S. Ct. at 597. Ordonez was sentenced to 212 months of imprisonment, which is within the properly calculated advisory Guidelines range of 188 to 235 months and thus is presumptively reasonable.

*United States v. Cisneros-Gutierrez*, 517 F.3d 751, 766 (5th Cir. 2008) (citing *United States v. Medina-Argueta*, 454 F.3d 479, 481 (5th Cir. 2006)). Ordonez argues that a sentence below the Guidelines range is permitted based on his personal history and post-offense conduct. However, "[t]he fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall*, 128 S. Ct. at 597. More significantly, Ordonez has pointed to no facts demonstrating that the district court abused its discretion by refusing to grant his request for a downward departure. Accordingly, we conclude that the sentence imposed is substantively reasonable.

## CONCLUSION

For the reasons stated above, the district court's judgment of conviction and sentence is AFFIRMED.

AFFIRMED.